## CLARDY et al. v. HURST.

(Court of Civil Appeals of Texas. April 12, 1911. Rehearing Denied May 3, 1911.)

1. STATUTES (§ 225½*)—GENERAL STATUTES— SPECIAL STATUTES.

A general statute yields to a special statute.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 305; Dec. Dig. § 225½.*]

2. INTOXICATING LIQUORS (§ 25*)—LOCAL OPTION ELECTIONS—STATUTES.

The local option law, Rev. St. 1895, arts. 3389, 3390, of which provide that the officers holding local option election shall conform to the existing laws regulating elections in all respects not herein specified, and requiring the commissioners' court to hold a special session to open the polls and count the votes, is complete within itself, so far as it undertakes to prescribe the duty of the commissioners' court, and article 1753 of the general election law does not apply to a local option election.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 25.*]

3. STATUTES (§ 188*)—CONSTRUCTION—MEANING OF WORDS.

Under Rev. St. 1895, art. 3268, providing that in construing a statute the ordinary signifi-

cation shall be applied to the words thereof, words in a statute must be taken in their ordinary and popular acceptation, unless technical terms are used, or unless it appears from the context that the words used are not intended to be understood in their ordinary signification.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. § 188.*]

4. STATUTES (§ 190*)—CONSTRUCTION—UNAMBIGUOUS STATUTE.

Where a statute is plain and unambiguous, there is no room for construction.

[Ed. Note.—For other · cases, see Statutes, Cent. Dig. §§ 266, 269; Dec. Dig. § 190.*]

5. INTOXICATING LIQUORS (§ 35*)—LOCAL OPTION ELECTION—"POLLS."

Under Rev. St. 1895, art. 3390, requiring the commissioners' court to hold a special session after a local option election, "for the purpose of opening the polls and counting the votes," the commissioners' court must open the ballot boxes and count the votes, instead of merely canvassing the returns made by the officers of the election; the word "polls" referring to the ballot boxes.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 6, p. 5446.]

6. ELECTIONS (§ 241*)—COUNT OF VOTES—PARTICIPATION BY CLERK OF COURT.

Rev. St. 1895, art. 1747, requiring the county clerk to safely keep the ballot boxes, does not prevent the county clerk from complying with an order of the commissioners' court requiring him to open the boxes, to enable the court to count the votes.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 241.*]

7. INJUNCTION (§ 118*) — CANVASS BY COMMISSIONERS' COURT—ACTION BY RESIDENT CITIZEN—PETITION.

A petition by a resident citizen praying for an injunction to restrain the commissioners' court from opening the ballot boxes and counting the ballots cast at a local option election must allege facts showing what interest he has in the election, and an allegation that the threatened acts of the commissioners' court will work irreparable harm is insufficient.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

8. INJUNCTION (§ 122*)—PETITION—VERIFICATION—REQUISITES.

Under Rev. St. 1895, art. 2992, prohibiting the granting of an injunction, unless the applicant therefor shall present his petition verified by his affidavit, a petition for an injunction, verified by one of the attorneys of the petitioner, who states that the facts alleged are within his knowledge and true, on information received from another, and that he believes the same to be true, is not sufficiently verified.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 262–268; Dec. Dig. § 122.*]

Appeal from District Court, Caldwell County; L. W. Moore, Judge.

Action by M. L. Hurst against J. B. Clarey and others. From a judgment for plaintiff, defendants appeal. Reversed.

E. B. Coopwood, John N. Gambrell, and Barber & McKie, for appellants. Frank S. Roberts, Geo. E. Lenert, and Jeffrey, Jeffrey & Fielder, for appellee.

RICE, J. · On March 11, 1911, an election was held in Caldwell county to determine whether or not intoxicating liquors should be sold therein. The officers of said election made their returns, to the effect that prohibition was defeated within said county by 17 votes, and on the 22d day of said month the commissioners' court of said county convened and entered an order to the effect that · they would, on the ensuing day, open the various ballot boxes and examine the ballots of the voters, to ascertain whether the returns of said election, as reported by said presiding officers, were correct. But before said court undertook to do so, appellee herein, a resident citizen of said county, presented his petition to the Honorable L. W. Moore, judge of the district court · of said county, complaining of said commissioners' court, alleging the facts hereinbefore recited and praying for a. temporary restraining order against said court, as well as the county clerk of said county, on the ground that such contemplated action was in contravention of the laws of this state, asking that they be restrained by injunction from opening or attempting to open said ballot boxes, and that upon final hearing said injunction be made perpetual. And said judge, on ex parte hearing, granted the writ as prayed for, whereupon three of the members of said commissioners' court have appealed to this court from said restraining order by virtue of the ·act of 1909, p. 354, and, by appropriate assignments they complain of the action of the court in granting said writ, alleging, first, that the petition was insufficient for various reasons; second, that said injunction was unlawfully granted, because the commissioners' court was not forbidden, but expressly authorized and required under the law, to do the very thing it was enjoined from doing, to wit, opening the polls and counting the votes cast at said election.

The proper disposition of this appeal, we think, involves the construction of articles 3389 and 3390 of the Revised Statutes, on the subject of local option, in connection with article 1753, R. S. It is contended on the part of appellant that these statutes not only permit, but require, the commissioners' court, where a local option election has been held, to actually open the polls and count the votes, notwithstanding the same have theretofore been counted by the officers holding said election, and a report thereof made to said court. While, on the other hand, appellees' contention is that said court is a mere canvassing board, and that said statutes do not contemplate that the court itself shall open the boxes and count the votes, but are only authorized to estimate the result from the returns as reported by the presiding officers of said election.

· Article 3389, R. S., prescribes that: "The officers holding said election shall in all respects not herein specified conform to the existing laws regulating elections, and after

the polls are closed shall proceed to count the votes, and within ten days thereafter, make due report of said election to the aforesaid court." Article 3390, Id., provides that: "Said court shall hold a special session on the 11th day after the holding of said election, or as soon thereafter as practicable, *for the purpose of opening the polls and counting the votes*, and if a majority of the votes are 'for prohibition,' said court shall immediately make an order declaring the result of said vote," etc.

The power conferred upon the commissioners' court by the article last quoted is entirely different from that conferred by article 1753 of the general election law, which provides that on the Monday next following the date of the election, and not before, the county commissioners' court shall open the election returns and estimate the result, recording the state. of the polls in each precinct in a book to be kept for that purpose. If the general election law is to control, then we are inclined to think that appellees' contention is correct; but if the local option statute must alone be looked to in determining the question, then it would seem that appellant's contention is well founded. With respect to any conflict between the general election law and the local option law, it appears that the Terrell election law by its terms provides that the same shall not in any way interfere with or repeal any local option law of this state, except as specially provided therein. See final section 194, Acts of 1905, pp. 520–565.

The Supreme Court of this state, in Walker v. Mobley, 101 Tex. 28, 103 S. W. 490, held that the general election law does not apply to local option elections as to matters in which there is a conflict, and so far as the conflict exists the local option statute will prevail, and its provisions be applied to the conduct and management of local option elections. So it seems that by legislative enactment, as well as by judicial decision, that wherever the local option statute is in conflict with the general election law upon any subject the provisions of the local option statute will control.

[1] But, in the absence of express legislative regulation upon this subject, we think the same result would be reached, because the universal rule of statutory construction requires statutory provisions, general in their nature, to yield to enactments covering the specific subject under consideration.

[2] Article 1753, upon which appellees rely, above quoted, does not apply to special elections, unless there is no provision in the special law governing such election. The general law provides that the return of elections shall be made to the county judge. There are various special elections authorized by the laws of this state; the manner of holding them, and the returns of such elections, and the ascertainment of the re-

sults thereof, are all governed by special statutes, in many respects differing from the general law upon the subject of elections. Among them may be mentioned stock laws, laws for the purpose of detaching a portion of a county and attaching it to another county, county site election laws, special election law to exterminate prairie dogs, as well as others not now recalled. It certainly would not be contended that in these several special elections the officers holding the same, as well as those charged with the ascertainment of the result, should follow the general election law to the exclusion of the special law directing how such special elections should be held and the results declared. The local option law itself directs the officers holding elections thereunder to be governed in all respects by its own provisions, and only permits resort to the general election law where there is no definite procedure of its own. Believing that the local option statute is complete within itself, so far as it undertakes to prescribe the duty of the commissioners' court with reference to the ascertainment of the result of such election, it therefore follows that we are only concerned with determining what was meant by the Legislature in the passage of the act under consideration, to wit, article 3390, when it directed that said court should hold a special session on the 11th day after the holding of said election, or as soon thereafter as practicable, for the purpose of opening the polls and counting the votes, and declaring the result thereof.

[3] In the construction of civil statutory enactments, our statute provides that the ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject-matter, when they shall have the same signification attached to them by experts in such art or trade, or with reference to such subject-matter. See article 3268, Revised Civ. Stat. Words employed by the Legislature shall be taken in their ordinary and popular acceptation, unless technical terms are used, or unless it clearly appears from the context that the words used were not intended to be understood in their ordinary and popular signification. See Engelking v. Von Wamel, 26 Tex. 469.

[4] If the statute is plain and unambiguous, there is no room for construction or interpretation. See Harrington v. Galveston, 1 White & W. Civ. Cas. Ct. App. § 793; Thompson v. Buckley, 1 Tex. 33; Sutherland v. De Leon, 1 Tex. 250, 46 Am. Dec. 100; Runnels v. Belvin, 51 Tex. 48.

[5] Adopting this rule of construction, it would seem that the law requiring the commissioners' court to convene "for the purpose of opening the polls and counting the votes" can have but one meaning, because the ordinary and average mind would understand from this language that the court

was directed to open the ballot boxes and count the votes, and that it was never intended that they should merely meet for the purpose of canvassing the returns as made by the officers of the election. The word "polls," as here used, we think, has reference to the receptacle or box within which the ballots are deposited; and certainly, by the use of the word "vote," as here used, is meant ballot. If this language were addressed by one person to another, it seems to us he would certainly understand by it that he was to open the ballot boxes and count the votes therein, and not merely to open the election returns and estimate the result therefrom.

In Burrell v. State, 65 S. W. 914, the Court of Criminal Appeals, speaking through Mr. Justice Brooks, in passing upon the same question here under consideration, says, after quoting articles 3389 and 3390, R. S.: "We hold that under the provisions of the above articles the commissioners' court can count the votes, regardless of what result the election officers may have reached in their count of the vote; and when they count the votes they can declare the result of the election as provided in said article. The fact that the officers of election had counted the votes would not preclude the commissioners' court doing so. Hence the appellant's contention that the law is invalid on the ground that the commissioners' court recounted the vote is not well taken."

In Burks v. State, 51 Tex. Cr. R. 637, 103 S. W. 851, where the defendant was convicted of violating the local option law in precinct No. 3 of Hamilton county, it appeared that there had been two elections held in said precinct. The first election was held in pursuance of the order of the commissioners' court; but when said court met to count the vote and declare the result it concluded that the election had not been fairly held, and refused to count the vote and declare the result, but ordered another election for said precinct, which was thereafter held, and at which election local option carried and was put into effect. The conviction was had under the law based upon the second election. The Court of Appeals, as we think properly, held that the commissioners' court had no authority to refuse to count the vote cast at the first election and order another election, because this, in effect, was setting aside the first election—a power not conferred by the Constitution and laws upon said court, but alone upon the district courts. And in said case Chief Justice Davidson held that article 3390, R. S., required the commissioners' court to count the votes and declare the result. With the wisdom of the law as thus enacted, we have nothing to do; this was a matter for the Legislature. Our duty is to declare the law as we find it written.

Believing that there is no uncertainty or ambiguity in the law, and that the legislative intent is clearly expressed therein, we hold that these decisions correctly announce the duty of the commissioners' court under the statute in hand. We therefore hold that the order of the commissioners' court declaring that they would proceed to open the polls and count the votes was in accordance with their statutory duty in this respect, and that the district court erred in granting an injunction, restraining them from the performance of such duty.

[6] We do not believe that article 1747, R. S., prohibits the county clerk from permitting the ballot boxes to be opened by the commissioners' court, for the reason that if it becomes the express duty, as we think, of the commissioners' court to open the boxes and count the votes, then, as incident to said power, they have the right to require the county clerk, by process or otherwise, to open the boxes for this purpose. The law merely requires him to safely keep these boxes; certainly it is not inconsistent with his duty to open them under the mandate of the court.

[7] Besides this, we think that the assignment assailing the petition on the ground that it did not state a cause of action is well taken. There is no allegation of fact showing what interest the plaintiff had in the election. Nor was it sufficient to merely allege that the commission of the threatened acts would work irreparable harm, because the facts showing this must be alleged. See Holbein v. De La Garza, 126 S. W. 42.

[8] Nor was the petition properly verified, the affidavit being made by one of the attorneys, who states that the facts alleged are within his knowledge true and correct, upon information he had received from another person, and that he verily believes the same to be true. See article 2992, Rev. Stat.; Pullen v. Baker, 41 Tex. 419; M., K. & T. Ry. Co. v. Pietzsch, 10 Tex. Civ. App. 572, 30 S. W. 1083.

Believing that the district judge erred in granting the writ, his order is therefore set aside, and the injunction dissolved.