GRAVES v. M. GRIFFIN O'NEIL & SONS et al. (No. 7790.)

(Court of Civil Appeals of Texas. Dallas. Nov. 11, 1916.)

1. INJUNCTION ☞145—AFFIDAVIT TO PETITION.

The affidavit verifying petition, without which Vernon's Sayles' Ann. Civ. St. 1914, art. 4649, provides injunction shall not be granted, must be that the facts stated in the petition are true, and must be direct and positive and not from hearsay; so that one that affiant has read the petition, and that the statements of facts there are true to the best of his knowledge and belief, is insufficient.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 318, 321; Dec. Dig. ☞145.]

2. APPEAL AND ERROR ☞854(2) — AFFIRMANCE—REASONS OF TRIAL COURT.

Judgment denying injunction, though placed on other grounds, may be affirmed because of insufficiency to authorize injunction of the affidavit to the petition, questioned by special demurrer.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3408–3410; Dec. Dig. ☞854(2).]

3. MUNICIPAL CORPORATIONS ☞898—"WARRANTS" OR "BONDS."

A city intending to issue warrants as evidence of indebtedness created by contracts for improvements, and having taken the steps necessary therefor, instruments issued pursuant thereto, regardless of their form and the fact that they contain elements of a bond, are warrants, and not bonds, which it cannot issue unless authorized by a majority of the taxpaying voters.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1883; Dec. Dig. ☞898.

For other definitions, see Words and Phrases, First and Second Series, Bond; Warrant.]

4. MUNICIPAL CORPORATIONS ☞1000(6) — TAXPAYER'S ACTION — CORRECTION OF RECORD OF CITY COUNCIL.

All parties interested being before the court in a taxpayer's action to enjoin collection of a tax to retire city warrants, on the ground that the levy did not have the consent, required by Rev. St. art. 931, of two-thirds of the aldermen elected, the record of the city council, pleaded by plaintiff, showing that only three of the five aldermen voted for the levy being directly attacked by allegation that it was a clerical mistake, and that in fact four of the aldermen voted therefor, may be required to be corrected, as prayed, on evidence showing such fact.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. ☞1000(6).]

5. MUNICIPAL CORPORATIONS ☞142 — DISQUALIFICATION—HOLDING TWO OFFICES — "OFFICE OF EMOLUMENT."

No salary for alderman being provided by the statute under which a city was incorporated or by ordinance, he, though holding another salaried office, is not, within Const. art. 16, § 40, prohibiting any person from holding at the same time more than one civil office of emolument.

[Ed. Note.—For other cases, see Municipal Corporations, Cent.Dig. § 314; Dec.Dig. ☞142.]

6. MUNICIPAL CORPORATIONS ☞147—ALDERMEN — COLLATERAL ATTACK ON QUALIFICATION.

The issue of disqualification under Const. art. 16, § 40, of an alderman because of election to and acceptance of another office of emolument, not being directly raised by the pleadings in a suit to enjoin collection of a tax, and he having been at least a de facto alderman, acting under color of office, his vote for the levy cannot be disregarded.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 324, 325; Dec. Dig. ☞147.]

7. MUNICIPAL CORPORATIONS ☞340 — WARRANTS—DIVERSION FROM PURPOSE.

There was no diversion from their purpose of warrants of a city issued for improvement and extension of its waterworks, then consisting of a well; the object of the contract being to connect the system to such well, and the specifications of the contract being carried out, with the single exception that after the contract was made and the work was commenced it was found the well was too small, and the city from

other funds dug a larger one, a few feet away, and the system was attached to it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 869; Dec. Dig. &#9756; 340.]

8. MUNICIPAL CORPORATIONS &#9756;354 — CONTRACT—ABROGATION BY SUBSEQUENT CONTRACT.

Contracts for municipal improvements were not abrogated by a subsequent agreement of the city to deliver in advance the warrants for the work on the execution of an indemnity bond.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. &#9756;354.]

9. MUNICIPAL CORPORATIONS &#9756;354 — CONTRACTS—ABROGATION BY SUBSEQUENT CONTRACT.

Contracts for municipal improvements cannot be abrogated by a subsequent contract, if it be illegal and void because authorized by no ordinance or resolution of the city council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. &#9756;354.]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by N. C. Graves against M. Griffin O'Neil & Sons and others. From an adverse judgment, plaintiff appeals. Affirmed.

J. A. L. Wolfe, of Sherman, for appellant. J. J. Collins, of Dallas, and Webb & Webb, of Sherman, for appellees.

TALBOT, J. This suit was instituted by the appellant to restrain the appellees the city· of Tioga, its mayor, A. J. Scott, and board of aldermen, Henry McGehee, Harry Lauderback, R. E. Speers, T. J. Price, and R. V. Perry from carrying out certain contracts entered into with M. Griffin O'Neil & Sons, from diverting certain funds created for a specific purpose to other and different uses, and to enjoin the collection of certain taxes which had. been levied by the board of aldermen of the city of Tioga for the purpose of paying the interest and creating a sinking fund for the retirement of certain warrants issued by the city of Tioga to M. Griffin O'Neil & Sons. On the 7th day of July, 1916, the Hon. W. M. Peck granted a temporary restraining order and set the case down for hearing for Monday, July 24, 1916. On July 12, 1916, an order was entered modifying the original order so as to permit appellees to put in engine and lay mains in the streets of the city of Tioga. On the 24th day of July, 1916, the cause came on for hearing, and same being adjourned until a later date, was completed on September 2, 1916, when an order was entered dissolving the temporary restraining order theretofore granted, and denying the temporary injunction prayed for. It was further ordered that the cause be continued on the docket of the district court for final hearing and disposition. Plaintiff, in open court, excepted to the ruling of the court, and gave notice of appeal.

The allegations of the appellant's petition are, in substance:

That the city council of Tioga, Grayson county, Tex., on the 30th day of March, 1916, by ordinance, entered into two contracts with the appellee M. Griffin O'Neil & Sons—one for the construction of certain street improvements in accordance with plans and specifications adopted therefor, at a cost of $4,000; the other for the improvement and extension of the waterworks system of the city, according to plans and specifications adopted therefor, at a cost of $7,000. That the compensation for the payment of the work under the respective contracts was provided to be paid by the issuance of interest-bearing warrants of the city to the contractor, as the work progressed. That the respective ordinances provide for the creation of an interest and sinking fund by the levy of a tax of 25 cents on the $100 to pay for the warrants at their respective maturing dates for the improvements and extension of the waterworks, and a levy of a tax of 15 cents to pay for the warrants paid to the contractor for the improvement of the streets at their maturing dates. That on the 18th day of May, 1916, the board of aldermen of the city of Tioga passed an ordinance "auditing and allowing estimate No. 1 presented to M. Griffin O'Neil & Sons, contractors, covering street work which has been completed by contractors under his contract with the city of Tioga, Tex., and authorizing the delivery to said contractor of city of Tioga, street improvement warrants hereby authorized to be issued in payment for said work." By said ordinance it was declared that the contractor had completed, in accordance with the terms of his contract, all the street improvement work in accordance with the plans and specifications attached to his contract of date March 30, 1916, and the work was accepted by the city and allowing contractor's estimate and ordering delivered said $4,000 in street improvement warrants. On the same date, to wit, May 18, 1916, a similar ordinance was passed auditing the estimate of said contractor for the waterworks improvement provided for in his contract of date March 30, 1916, declaring that the work had been completed in accordance with the plans and specifications, was thereby accepted by the city council, and ordering the delivery to said contractor the said $7,000 in waterworks improvement warrants provided for in the contract and ordinance of date March 30, 1916. That the mayor and the city secretary of the city of Tioga each joined in a certificate to the effect that said work had been done, completed, and accepted by the city council of the city of Tioga as in full compliance with said respective contracts, and that the work done was worth the amount paid therefor. That on the 18th day of May, 1916, M. Griffin O'Neil & Sons and the city of Tioga, Tex., by and through its

mayor, A. J. Scott, entered into the following contract:

"The State of Texas, County of Grayson: This agreement, made this the 18th day of May, 1916, between the city of Tioga, Grayson county, Texas, party of the first part, and M. Griffin O'Neil & Sons, of Dallas, Dallas county, Texas, party of the second part, witnesseth: That heretofore on the 30th day of March, 1916, the above parties entered into a contract whereby the party of the second part is to construct a system of waterworks for the party of the first part, at the cost of eleven thousand ($11,000.00) dollars, and by the provisions of which contract the said party of the first part is to pay to the said party of the second part the before-mentioned sum of eleven thousand dollars in legally issued warrants of the city of Tioga. It is therefore hereby further agreed that the party of the second part shall deliver to the party of the first part a solvent surety bond in the sum of eleven thousand ($11,000.00) dollars, said bond to guarantee all the provisions of this contract, and stand as a guarantee that the party of the second part will immediately start the construction of the waterworks system and complete said system in accordance with the attached plans and specifications and at for the sum of eleven thousand dollars, the party of the first part hereby agreeing, on receipt of said surety bond, to deliver to the party of the second part the before-mentioned warrants properly executed and signed, together with all the necessary delivery papers executed in the same manner as though the before-mentioned work had been completed. Signed and sealed by the respective parties. M. Griffin O'Neil & Sons, by Donald O'Neil, Secretary. City of Tioga, Texas, A. J. Scott, Mayor."

That on the date this contract was entered into the city council of said city issued to M. Griffin O'Neil & Sons the warrants under both the contracts calling for street improvement and the improvement and extension of the waterworks system. That the bond required of M. Griffin O'Neil & Sons in the foregoing contract was given. That this transaction was done by virtue of a conspiracy between the appellees on the one hand, and M. Griffin O'Neil & Sons on the other, to accomplish by indirection, which, if done directly, would have been an open and flagrant violation of law, and to avoid the law requiring bonds to be first submitted to a vote of the qualified taxpayers, and that the warrants so issued are, in truth and in fact, bonds. That the taxes levied or attempted to be levied in each of the ordinances referred to are illegal, in that two-thirds of all the aldermen elected to said offices of the city did not vote for said tax levy. That the mayor and board of aldermen are seeking to divert, disburse, and expend the $4,000 fund authorized for street improvement in the construction of a sytem of waterworks, and that the fund of $7,000, which was authorized and created for the purpose of improving and extending the present waterworks system of the city, is being diverted by the council in attempting to use the same, for the construction of a separate and independent system of waterworks in the city. That no interest or sinking fund was provided to take care of an alleged contract of May 18, 1916, for $11,000, nor was the same authorized by an ordinance or resolution,

or in a lawful manner, and that appellees knew that the $11,000 fund was being diverted from the purpose for which it was created. That the city of Tioga paid to appellee, contractor, the warrants or money prior to the doing of any work stipulated in the contract by the contractor. That the city council is attempting to levy a tax and will continue to levy a tax, as provided for by the respective ordinances, for the year 1916, and subsequent years, to pay for the warrants. That on May 18, 1916, an ordinance was passed by the city council of the city of Tioga, declaring, and the mayor and secretary made certificate thereof, to the effect that M. Griffin O'Neil & Sons had done and performed all the work required of them under their contracts entered into on the 30th day of March, 1916, but that no work whatever had been done under said contracts.

The prayer of the petition is, in substance, that M. Griffin O'Neil & Sons be enjoined from receiving the alleged city warrants, or, in the event they have already received them, from making any disposition thereof. That said aldermen be enjoined from diverting said funds and be required to hold said funds, as a special fund for the sole purpose for which same was by said ordinances provided. That said mayor and aldermen of the city of Tioga be restrained from any attempt to enforce said ordinances, and particularly that portion levying a tax of 15 cents and 25 cents, respectively, on the $100 on the property within the corporate limits of said city for the purpose of paying interest and creating a sinking fund on said respective sums of $4,000 and $7,000 and for general, special, and equitable relief.

Appellant insists upon the following propositions in support of his contention that the temporary injunction prayed for by him should have been granted, namely: First, that the evidence of indebtedness given by the city of Tioga to the contractor, both as to the $4,000 for street improvement and $7,000 for waterworks improvement are void, because not authorized by a majority of the qualified property tax paying voters of the city; second, that as the tax levy for paying the interest and sinking fund on the indebtedness created by the city of Tioga to M. Griffin O'Neil & Sons was not authorized by a two-thirds vote of the aldermen elected by the city of Tioga, such tax levy was void; third, that the $4,000 of street improvement warrants could not be legally diverted to other purposes; fourth, that the authority conferred by the ordinance of March 30, 1916, to improve and extend the present waterworks system of the city of Tioga did not confer upon the officials of said city the authority to build and construct an independent system, and the use of $7,000 in warrants issued under said ordinance for any purpose other than that specifically permitted by said ordinance was an illegal diversion of the same; fifth, that the contracts, both for

street improvement and waterworks improvement of date March 30, 1916, were abrogated by the ordinances of date May 18, 1916; sixth, that the contract of May 18, 1916, created a debt against the city of Tioga for $11,000, which was not payable out of the current revenues for the year, and there being no provision made at the time for paying the interest and creating a sinking fund for its retirement, same was void; seventh, that the contract of May 18, 1916, for the construction of a system of waterworks for the sum of $11,000, not having been authorized by any ordinance or resolution of the city council of the city of Tioga, was void; eighth, that the $4,000 street warrants and the $7,000 waterworks warrants having been issued for the purpose of creating a fund of $11,000 for the construction of a system of waterworks to cost $11,000, the whole transaction was illegal and void.

[1, 2] The appellees, in briefs and arguments filed by appellees in this court, reply to the foregoing propositions of the appellant, but insist, in effect, that a special demurrer urged by them to the appellant's petition, on the ground that it was not verified as required by law, should have been sustained, and that therefore independently of any other question in the case, the injunction sought was properly denied, and the judgment of the court below should be affirmed by this court. The affidavit to the petition, so far as necessary to state, is:

"That I [the affiant] have read the foregoing petition and (state) that the statements of fact therein contained are true to the best of my knowledge and belief."

Clearly, this affidavit was sufficient. Article 4649 of Vernon's Sayles' Texas Civil Statutes provides that no writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge, verified by his affidavit. The test of the sufficiency of this affidavit, according to the decisions of the appellate courts of this state, is:

"That the affidavit of the facts sworn to must be so direct and unequivocal as that an indictment for perjury would lie, if the oath is falsely made." Pullen v. Baker, 41 Tex. 419; Moss v. Whitson, 130 S. W. 1034; Clarey v. Hurst, 136 S. W. 840; Smith v. Banks, 152 S. W. 449.

The affidavit must be that the facts stated therein are true. It must be positive and not from hearsay. Railway Co. v. Pietzsch, 10 Tex. Civ. App. 572, 30 S. W. 1083. The test stated is not met by the affidavit made to appellant's petition, and the court erred in overruling appellee's demurrer. The affidavit not being such as is required by law, the trial court would have been justified in refusing the injunctive relief sought for that reason, and the fact that the court for other reasons satisfactory to it denied such relief, even if such reasons were not sound, its judgment should not be disturbed. If his conclusion is right it is immaterial if a wrong reason may have been given in support thereof. The fact then that the injunction asked for should have been denied because appellant's petition was not verified as required by law, we might rest an affirmance of the court's judgment upon the fact alone, but the case is still upon the district court docket for final determination, and we regard it proper if not essential to express our views upon other questions raised on this appeal. We shall therefore briefly state our conclusions in regard to the propositions urged by appellant that may become material on a further hearing of the case in the trial court.

[3] 1. We are inclined to the opinion that the warrants issued by the city of Tioga and given to the contractor, M. Griffin O'Neil & Sons should not be regarded as bonds and void because not authorized by a majority of the qualified property tax paying voters of said city. If it was the intention of the city council of the city of Tioga to issue warrants as evidence of the indebtedness created for street improvement and for waterworks improvement by the contracts of date March 30, 1916, and took such steps as were necessary to issue warrants, the instrument drawn, regardless of its form, and the fact that elements of a bond were contained in it, would be, it occurs to us, a warrant. The city of Tioga could not legally issue bonds of the city for any purpose authorized by law, without first submitting the question of their issuance to the voters of the city of Tioga, who are qualified property tax payers of said city, and a majority of such qualified property tax payers voting at said election is in favor of the issuance of bonds. But the city of Tioga was authorized to make contracts for the improvement of its streets and waterworks, and could determine that such improvements should be paid for otherwise than by the sale of bonds. If, therefore, said city determined that the improvements involved in this suit should be paid for by warrants of the city, and such warrants and not bonds were issued for that purpose, the statute forbidding the issuance of bonds, unless authorized by a majority of the taxpaying voters of the city, has no application. Article 931 of the Revised Statutes provides that the city council of an incorporated city shall have power by ordinance to assess and collect taxes, provided no tax shall be levied unless by consent of two-thirds of the aldermen elected. This has been a difficult question to determine, but we have reached the conclusion that the testimony is sufficient to warrant the conclusion that the city of Tioga by proper ordinance issued warrants and not bonds in payment of the indebtedness created for the improvement of its streets and waterworks.

[4] 2. The evidence was sufficient to warrant the lower court's conclusion that the tax levy to provide a fund with which to pay the principal and interest of the warrants issued

to M. Griffin O'Neil & Sons under the contracts for the improvements in question was made by a two-thirds vote of the aldermen elected by the city of Tioga. The evidence shows that there were five aldermen elected, and that one of them, prior to the making of the contracts with M. Griffin O'Neil & Sons for the improvement of the streets and waterworks system of the city of Tioga and the passage of the ordinance in relation thereto, had moved out of the city and abandoned his office. T. J. Price was elected an alderman of the city in April, 1915, and later was elected to the office of city secretary at a salary of $2 per month. At the time of the tax levy, to wit, March 30, 1916, there were present A. J. Scott, mayor, and Aldermen Henry McGehee, Harry Lauderback, R. E. Speers, and the said T. J. Price. The record in the minutes book of the city council showed that the vote by which the tax levy was made to create a fund for the payment of both $4,000 warrant for street improvement, and $7,000 for waterworks improvement, was made by a vote of three ayes and no noes. This status of the vote, as shown by the record of the city council, was pleaded by the appellant, and the contention made that it affirmatively appeared therefrom that two-thirds of the aldermen of the city of Tioga had not voted in favor of the tax levy for paying the indebtedness incurred with M. Griffin O'Neil & Sons, and hence such levy was void. The appellees by affirmative allegations charged that the record of the city council showing that only three of the aldermen elected by the city of Tioga had voted for said tax levy was a mistake, a clerical error, and should be corrected; that in truth and in fact four of the aldermen, constituting two-thirds of the number which had been elected by said city, voted for said levy, and they prayed that said record be corrected. These allegations of the appellees were, we think, such a direct attack upon the record in question as to admit proof of its incorrectness and authorize the court upon a final hearing of the case to enter judgment directing that said record, if found upon all the evidence adduced to be incorrect, be corrected and made to speak the truth. Whether parol testimony would have been admissible to show that a mistake had been made in recording the vote upon the proposition to levy a tax for the payment of the warrants issued and delivered to M. Griffin O'Neil & Sons, and that four aldermen voted for said levy instead of three in the absence of appellees' pleading attacking the correctness of said record, we need not determine. That a correction of such mistake could be required upon proper allegations amounting to a direct attack upon the record and upon proof of those allegations we have no doubt. In the present case all the parties are before the court, and we can see no good reason why the correction of the record should not be ordered, as requested, if the evidence

should show it to be incorrect. The evidence upon the hearing at which the judgment of the court now appealed from was rendered was amply sufficient to show that four of the aldermen elected by the city of Tioga voted for the levy of the tax in question, and in view of appellees' pleadings above referred to we hold that said testimony was admissible, and justifies the conclusion that the tax levy in question was authorized by a two-thirds vote of the aldermen of the city of Tioga.

,[5, 6] But appellant insists that if parol evidence was admissible, either under appellees' pleadings or without such pleadings, to contradict the record made by the city of Tioga in relation to the vote cast for the levy of the tax to create a fund for the payment of the warrants delivered to M. Griffin O'Neil & Sons, still as R. V. Perry had moved out of the city and ceased to be an alderman and T. J. Price had been elected city secretary and accepted that office, it was not possible for there to have been more than three qualified votes given in favor of the tax levy. This contention is based upon that provision of our Constitution (section 40, article 16) which prohibits any person from holding in this state at the same time more than one civil office of emolument. The answer to this contention, if there be no other, is that the office of alderman of the city of Tioga is not an office of emolument, and the provisions of the Constitution referred to has no application. The statute under which the city of Tioga is incorporated provides no salary for aldermen and none is provided by ordinance of said city, so far as is disclosed by the record before us. If, however, we should be mistaken in the view that the office of alderman in the city of Tioga is not one of emolument, then we think the vote of T. J. Price in favor of the ordinances in question should be held to be legal upon the ground that he was a de facto alderman. There is absolutely nothing to show that his election to the office of alderman was void, and it cannot therefore be said that he has no colorable right to the office. He was, it appears, acting colore officii, and his right cannot be tried in a collateral proceeding. It could only be tried in an action in which the issue was directly presented. Such issue is not so presented by the pleadings of the appellant in this case. Price, in voting for the ordinances, was acting, at least, under color of authority, and it must be held in this proceeding that he was empowered so to act. Broach v. Garth, 50 S. W. 594; Ex parte Call, 2 Tex. App. 497; Thompson v. Johnson, 84 Tex. 584, 19 S. W. 784.

3. The evidence is of such a character as to justify the conclusion that the appellees had not and did not intend to divert the $4,-000 warrant issued for street improvement to the improvement or construction of waterworks. The trial court's judgment necessari-

ly embraces such a finding, and we would not be warranted in the present status of the evidence to disturb that finding. It is clear that we would not be authorized to say as a matter of law that such diversion had been or was intended to be made.

[7] 4. We are also of the opinion that we would not be warranted in saying that the appellees had or intended to divert the $7,000 warrants issued for the improvement and extension of the waterworks of the city of Tioga from the specific purpose permitted by the ordinance authorizing their issuance. The evidence is sufficient to justify the conclusion that the $7,000 warrants were used for practically the same purpose for which they were issued. The undisputed facts show that the only waterworks system that Tioga had at the time the contract in question was entered into was a public well on the public square in the town of Tioga, and that the object in making the contract for the improvement of its waterworks was to connect the system to that well, and the specifications constituting a part of the contract that was entered into were literally carried out by the contractors with the one exception that after the contract was made and the work commenced it was found that the old well was possibly too small, and the city of its own means outside of this contract simply dug a larger and more efficient well within a few feet of the old well, and the system was attached to it. A. J. Scott, mayor of the city of Tioga, testified:

"The plans and specifications represented here by these blueprints and plans and specifications we had before us were made at the time we entered into the original contract for the extension of the waterworks system. Those people are doing identically the same work, except they are tying on to a different well. The new well is about 20 feet east and southeast of the old well. So far as O'Neill & Sons are concerned they are doing identically the same work they agreed to do, and we just simply furnished them a different well. We have not given up the city's claim to the old well. If the new well should get out of repair the old well is close enough to easily attach to it. We are still laying claim to both wells; but so far as the plans and specifications that were made and contemplated that stated that it was an extension of the old system, that is the identical work that they are doing now. By the term 'extension of the present system' we meant tying on to the old well. That was all of the present system we had. If we had come into possession of the other system we could not have used it in this because the well wasn't large enough, and the casing is all rotten, and I don't believe we could have put it in shape to use it."

[8, 9] 5. The contract of May 18, 1916, referred to in the former part of this opinion, did not have the effect to abrogate the contracts for street improvement and waterworks improvement, bearing date March 30, 1916. At least it could not be said in the present state of the record as a matter of law that such was the effect of said contract and ordinance. The conclusion is warranted from the testimony that said contract of May 18, 1916,

is simply an agreement by which the city of Tioga obligates itself to deliver to M. Griffin O'Neil & Sons the warrants issued for the improvements contracted for before the work of constructing said improvements was completed upon the execution and delivery to said city of a solvent surety bond in the sum of $11,000 guaranteeing that the said O'Neil & Sons would immediately start the construction of said improvements and complete them in accordance with certain plans and specifications. Donald O'Neil, without contradiction, testified that these specifications provided for the construction of a waterworks system on a $7,000 basis, and for $4,000 worth of street improvement. He further said:

"In order to obtain those warrants at the time we obtained them, we entered into that contract of indemnity. The contract recites that it is intended to indemnify the city of Tioga in the sum of $11,000, and it makes the statement that it is for waterworks purposes for the construction of a waterworks system. We agreed to take warrants of the city of Tioga in the amount of $7,000 to do certain waterworks construction. This instrument was written in our office and covers $11,000 worth of work. It says here $11,000 worth of waterworks. It was made to indemnify the city against our failure to proceed with the work after we had received warrants in payment for the $7,000 worth of waterworks and $4,000 worth of streets. The recitation in there that it was for waterworks system was not intended to indicate that we were building a waterworks system for $11,000. Our contract is specifically set out. It was not intended to change the terms of our original contract. We are constructing the work under the original contracts, $7,000 for waterworks, and $4,000 for streets."

Again, the contract of May 18, 1916, is signed by M. Griffin O'Neil & Sons, and the "City of Tioga, Texas, by A. J. Scott, Mayor," and appellant asserts in his seventh proposition urged before this court, that said contract was not authorized by any ordinance or resolution of the city council of the city of Tioga, and therefore void. If therefore said contract, for the reason asserted by appellant, was illegal and void, it was of no effect whatever, and could not of course abrogate the contracts of March 30, 1916.

6. Whether the $4,000 street improvement warrants and the $7,000 waterworks warrants were issued for the purpose of creating a fund of $11,000 for the construction of a system of waterworks alone, to cost $11,000, with the view of accomplishing indirectly that which the law would not permit appellees to do directly, as contended by appellant in his eighth proposition, was perhaps an issue of fact before the trial court, and not one of law. The trial court in the hearing of the application for the temporary injunction has resolved that issue of fact in favor of the appellees, and we regard such action as binding upon us in the present state of the evidence.

Believing we would not be warranted in reversing the judgment of the court below, the same is affirmed.