JOHNSON et al. v. FERGUSON et al.

No. 7918.

Court of Civil Appeals of Texas. Austin.

Dec. 6, 1932.

Rehearing Denied Dec. 10, 1932.

James V. Allred, Atty. Gen., and Neal Powers and R. G. Waters, Asst. Attys. Gen., for appellants.

James E. Ferguson and Judge Ocie Speer, both of Austin, for appellees.

McCLENDON, C. J.

Appeal from an interlocutory order granting, without notice (ex parte), a temporary injunction, in a suit brought by taxpayers against the members and chief engineer of the state highway commission (called herein the commission), seeking to enjoin the making of further contracts for constructing state highways; such contracts (so it is alleged) being beyond the power of the commission to make and therefore illegal, because there existed no legislative appropriation available for that purpose. The comptroller was also made a party defendant and sought to be enjoined from issuing warrants in payment of contract obligations so created.

The relief sought is predicated upon two counts to the effect:

1. That chapter 13, General Laws Third Called Session 42d Leg. (H. B. No. 2, p. 15 [Vernon's Ann. Civ. St. art. 6674q—1 et seq.]), repealed that portion of chapter 286, Gen. Laws Reg. Sess. 42d Leg. (1931), making appropriation for such construction.

2. That such appropriation, if not repealed, had already been exhausted.

■ The first count of appellees' petition, which urges that chapter 13, above, repeals the above-stated appropriation, is predicated upon sections 4 and 5 of the chapter (Vernon's Ann. Civ. St. arts. 6674q—4, 6674q—5), more particularly upon the wording of the latter. These sections read:

"Sec. 4. All further improvement of said State Highway System shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the Legislature out of the State Highway Fund. Surveys, plans and specifications and estimates for all further construction and improvement of said System shall be made, prepared and paid for by the State Highway Department. No further improvement of said System shall be made with the aid of or with any moneys furnished by the counties except the acquisition of rights of way which may be furnished by the counties, their subdivisions or defined road districts. But this shall in no wise affect the carrying out of any binding contracts now existing between the State Highway Department and the Commissioners Court of any county, for such county, or for any defined road district. In the development of the System of State Highways and the maintenance thereof, the State Highway Commission shall, from funds available to the State Highway Department, provide:

"(a) For the efficient maintenance of all highways comprising the State System.

"(b) For the construction, in cooperation with the Federal Government to the extent of Federal Aid to the State, of highways of durable type of the greatest public necessity.

"(c) For the construction of highways, perfecting and extending a correlated system of State Highways, independently from State Funds.

"Sec. 5. All moneys now or hereafter deposited in the State Treasury to the credit of the 'State Highway Fund,' including all Federal Aid money deposited to the credit of said Fund under the terms of the Federal Aid Highway Act, shall be subject to appropriation by the Legislature for the specific purpose of the improvement of said System of State Highways by the State Highway Department."

A brief résumé of the events leading up to the enactment of chapter 13 and of its general purposes and provisions will suffice to a clear understanding of the issue thus presented.

The commission was created by the act of 1917 (chapter 190, p. 416 et seq., General Laws 35th Leg.), establishing the state highway department. This act was amended from time to time, and its provisions carried forward into the 1925 codification of the Revised Civil Statutes under title 116, chapters 1 to 3, inclusive. The act provides for the establishment of a general system of state highways and for the designation of such highways by the commission. Certain rights and duties of supervision of the construction of state highways were originally vested in the commission; and provision was made whereby state and federal aid to such construction was extended to counties and road districts. Later the construction, improvement, and maintenance of state highways was vested exclusively in the commission. The revenues for such purpose, constituting the state highway fund, were derived in part from aid furnished by counties and road districts. Sections 3, 6, and 7, chap. 186, Gen. Laws 39th Leg., 1925 (R. S. arts. 6674c, 6674f, 6674g). Other sources of revenue included three-fourths of the state gasoline tax, and designated portions of motor vehicular license taxes (R. S. art. 6675 and amendments thereto [see Vernon's Ann. Civ. St. art. 6675a—1 et seq.]) and federal aid.

For a number of years past there had been an increasingly growing demand that counties and road districts be relieved of all

expense in connection with state highways, and that some equitable reimbursement be made for what they had already expended in that regard. The need for such relief and reimbursement was regarded by the Governor as sufficiently acute to require that the Legislature be called in Special Session on August 30, 1932, to enact legislation to that end. The call recited that it was highly important that: "To the limits of the constitutional power of the Legislature, the taxpayers of Texas shall be relieved, at the earliest possible moment, of the onerous and unfair burden of taxation now resting upon them by which their homes and farms and ranches and other properties are taxed to support road bond issues, heretofore voted by counties and road districts for the purpose of aiding in constructing roads that are now state highways, which burdens ought to be assumed and paid by those using the highways, out of the State Highway fund."

And the purpose of the call in this regard was stated to be: "To pass legislation providing that outstanding issues of road bonds, heretofore issued by counties and road districts, for the purpose of aiding in constructing roads which are now state highways shall be assumed by the State; and that all taxes required to be levied upon property within such counties or road districts to support such bonds, shall not be collected by such counties or road districts from the taxpayers therein for this year, 1932, or succeeding years, but that the principal and interest on said bonds, as the same may accrue, shall be paid out of the State Highway fund."

It was under this call that chapter 13 was enacted.

The first section of the act (Vernon's Ann. Civ. St. art. 6674q—1) sets forth its general purposes. In substance, it recognizes that the contributions of counties and road districts to the construction of state highways were in the interest of the "general welfare, settlement and development of the entire State," that such counties and road districts had thereby "performed functions resting upon the State," and that "both a legal and moral obligation rest upon the State to compensate and reimburse" them.

By section 3 of the act (Vernon's Ann. Civ. St. art. 6674q—3) sections 3, 6, and 7 of chapter 186, Gen. Laws 39th Leg. (R. S. arts. 6674c, 6674f, 6674g), above alluded to, providing for county and road district aid, were expressly repealed.

Sections 4 and 5 of the act are quoted in full above.

Sections 6 to 9 of the act, inclusive (Vernon's Ann. Civ. St. arts. 6674q—6 to 6674q—9), provide for the reimbursement; allocate for that purpose, as a "County and District Highway Fund," one-fourth of the proceeds of the gasoline tax; set up the machinery to effectuate the reimbursement through a "Board of County and Road District Indebtedness," which the act creates; and make two specific appropriations from the "County and District Highway Fund," to be applied by the board for the benefit of county and road districts equitably entitled thereto, one appropriation covering the balance of the present fiscal year ending August 31, 1933, and the other covering the remaining four months of 1933.

Section 11 of the act (Vernon's Ann. Civ. St. art. 6674q—11), repeals "all laws and parts of laws in conflict herewith"; and the emergency clause reads: "The fact that counties and defined road districts of this State should be immediately given the compensation and reimbursement provided for in this Act and that such relief and reimbursement cannot be given them without the passage of this Act creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in both Houses be suspended, and such Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

There is no express repeal of the appropriation, but it is contended by appellees that the provision of section 5 to the effect that the state highway fund shall be subject to future appropriation is inconsistent with an already existing appropriation. The inherent right of the Legislature to make a future appropriation of the fund already appropriated is urged as rendering section 5 supererogatory if the prior appropriation were not intended to be repealed; and under the rule that words and provisions embodied in a statute are presumed to effectuate some purpose, they must therefore be given effect other than that which would result from their entire omission. Though couched in our own language, we believe this is a fair and accurate statement of appellees' contention on this point. With this contention we are unable to agree.

Statutes are often but declaratory of the law as it exists at the time of their enactment. In fact, the earlier Codes were largely, and some of them probably entirely, but declaratory of customs which constituted the law of the land. Our own statutes are replete with literal enactments of constitutional provisions and declarations of the common law. Of these it might as justly be said that the Legislature was engaged in doing a useless thing—in performing a supererogatory act.

Section 5 of chapter 186, Gen. Laws Reg. Sess. 39th Leg. (Vernon's Ann. Civ. St. art. 6674c), reads: "All moneys now or hereafter deposited in the State Treasury to credit of the 'State Highway Fund,' including all Federal aid moneys deposited to the credit of said fund under the terms of the Federal

Highway Act *and all county aid moneys deposited to the credit of said fund under the terms of this Act* shall be subject to appropriation for the specific purpose of the improvement of said system of State Highways by the State Highway Department."

■ It will be observed that section 5 of chapter 13 (Vernon's Ann. Civ. St. art. 6674q —5) is a literal copy of art. 6674e, Vernon's Ann. Civ. St. with the portion we have italicized omitted. If it did no more than to subject the stated fund to future appropriation, it was equally as useless and unnecessary as section 5, chapter 13. It is not contended that this article repealed any existing appropriation, or did more than to allocate all moneys present and future deposited to the "State Highway Fund" to the "improvement" of the "System of State Highways by the State Highway Department." As such allocation we think it had the manifest purpose of removing such fund, beyond all doubt or peradventure, from the general revenue fund of the state and of devoting it, but not appropriating it, to the stated purpose. It served the double purpose of a declaration of policy and a direction to the state treasurer that the fund was not to be invaded for purposes other than those named in the article.

■ The clear purpose of section 5 of chapter 13 was to repeal the omitted portions of article 6674e. It but continued in effect the previous allocation, omitting therefrom the previously included county-aid fund. It may be urged that this was unnecessary since articles 6674c, 6674f and 6674g, which provided for such aid, were expressly repealed in sec. 3 of chapter 13. But even so, a re-enactment of article 6674e, so as to conform, through the omitted portions, to the other provisions of chapter 13, cannot justly be classed as an altogether purposeless and useless act.

Even from a strictly grammatical viewpoint the future tense in the phrase "shall be subject to appropriation" does not necessarily apply to "appropriation." It could as correctly be applied to the word "subject." The phrase is clearly susceptible of this interpolation, "shall *at all times hereafter* be subject to appriation *made and to be made.*" To give it the interpretation contended for by appellees it should be interpolated to read, "shall be subject *only* to appropriation *hereafter made.*" Viewed in the light of all the surrounding circumstances, we are clear in the view that the former and not the latter interpolation expresses the legislative intent.

In speaking upon the subject of repeal by implication where the later enactment contained the general provision repealing all laws and parts of laws in conflict therewith, Chief Justice Gaines, writing for the Supreme Court, said: "It is clear that there is no express repeal; that is, the provision in question is not directly pointed out as expressly repealed. But since the effect of a general provision repealing conflicting laws evinces that the Legislature had in mind that something was to be repealed, the 'courts will be less inclined against recognizing repugnancy in applying such statutes, while, in dealing with those of the other class, they will, as principle and authority requires, be astute to find some reasonable mode of reconciling them with prior statutes so as to avoid a repeal by implication.' Sutherland Stat. Const. p. 199a. But even with such a provision repealing all conflicting laws, the courts must find a repugnancy between the old provision and the new before they can find that the latter repeals the former." Gaddes v. Terrell, 101 Tex. 574, 110 S. W. 429.

We find no repugnancy between the two acts.

But there are other and cogent reasons for rejecting the repeal construction.

■■ Canons for the construction of statutes have but a single objective—the discovery of the true legislative intent. One of these canons, which holds a position of prominence and is employed with great frequency, is to the effect that the object sought to be accomplished by the enactment is a consideration of prime importance.

■ The purpose of chapter 13, as clearly set forth in the above quotations from the Governor's proclamation and in section 1 and the emergency clause of the chapter, is the relief of the taxpayers from burdens imposed by obligations incurred in the construction of state highways. Otherwise there is not the slightest intimation in the chapter or elsewhere of any purpose or design to affect in any degree the orderly operations of the highway department under existing law, practices, and policies, or to impede the improvement of the state highway system by inhibiting all construction not theretofore contracted. We say "otherwise," because the chapter does expressly withdraw from the state highway fund one-fourth of the gasoline tax and allocates it to the purposes of the chapter. To this extent the amount of the original appropriation is reduced, and as regards this withdrawal the appropriation may be said to be repealed by necessary implication.

Although not urged by appellees, the repeal for which they contend would also apply to all maintenance not already contracted. Additionally a very serious question would be presented whether all other items appropriated for the department, including all salaries of employees, would be embraced within the repeal. Appropriations for the department are made in the same act which makes the appropriation for further construction, and it expressly provides that they all "shall be paid out of the State Highway Fund." If by making all moneys then or thereafter deposited to the credit of that fund subject to future appropriation, section 5 of chapter 13 repealed

one appropriation from the fund (future construction), then it would seem inexorably to follow that all appropriations from the fund, for which the state was not already obligated by contract, would in like manner be repealed. Such construction of section 5 would, as appellants contend, create a virtual condition of chaos in the department; a purpose to bring about which result can by no fair process of reasoning be deduced from the wording of the act or the legislative intent. "The reaction of an impartial mind is little short of instinctive that the deduction is unreasonable and cannot have been intended by the framers of the statute." Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 571, 76 L. Ed. 1128.

Appellants urge the three following propositions in support of their contention that the second count of appellees' petition is insufficient to sustain the sought relief:

"1. Since appellees did not allege facts constituting an arbitrary or fraudulent abuse of the discretionary power vested by law in the Highway Commission to determine the probable revenues available during the fiscal year ending August 31, 1933, for the construction of highway projects, the Court erred in granting the temporary injunction appealed from in this cause."

"2. Since the petition of appellees, upon which the temporary injunction involved herein was granted, fails to show such an abuse of discretion by the Highway Commission as to render any contemplated contract illegal, appellees do not have a sufficient interest in the subject matter involved to maintain the instant suit, and the Court erred in granting the temporary injunction."

"3. Since the material facts, both as to the outstanding and contemplated contracts of the Highway Department and the probable revenues accruing to the Highway Fund for the fiscal year ending August 31, 1933, are based upon estimates of the appellees, which estimates, in turn, are based upon information and belief, the conditional verification, upon information and belief, of such petition is insufficient, and the trial court erred in granting the temporary injunction based thereon without notice or hearing."

These propositions are so interrelated that we will consider them together. As preliminary to such consideration the following should be observed:

■ (1) Appellees do not contend, nor do we think it could reasonably be contended, that the appropriation in question was not a valid, effectual appropriation of all moneys that should be deposited to the credit of the state highway fund during the fiscal year ending August 31, 1933.

■■ (2) In determining the amount for which the commission could contract beyond such items as were definitely fixed by the Legislature, it is manifest that the total available revenues to be derived from the various appointed sources would have to be estimated. The amount of these revenues was from their very nature uncertain and incapable of precise estimate in advance. They must, however, of necessity be contracted against in advance. No standard or criterion for estimating them is prescribed by law; nor is there any express designation of the official, board, or agency to make such estimate. It therefore follows necessarily that the highway commission is vested with such authority in the general discharge of its important duties; and that in the exercise of such authority it is vested with the discretion of adopting such reasonable methods, standards, and criteria as in its judgment are sound and appropriate. See, in this regard, Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855; State Highway Commission v. Coleman, 236 Ky. 444, 33 S.W.(2d) 318, 319.

(3) Appellants do not contend that appellees' interest in the state highway fund as taxpaying contributors thereto is not such as would entitle them to maintain an action to enjoin the state officials charged with the duty of its disbursement from performing any act which would be tantamount to an illegal diversion or misappropriation of the fund. See Terrell v. Middleton (Tex. Civ. App.) 187 S. W. 367 (error refused); Sherman v. Cage (Tex. Civ. App.) 279 S. W. 508; Hathaway v. Munroe, 97 Fla. 28, 119 So. 149. Their contention in this regard is that to constitute such illegality the acts complained of must amount to such a palpable abuse of the discretion vested in the commission as to render them arbitrary or fraudulent. This test is the same as that which appellants contend in their first proposition above is the only proper basis for the right to the relief sought. It will be seen, therefore, that the asserted proper bases for litigable interest in the subject-matter and for a maintainable cause of action are the same.

(4) Appellees expressly disclaim, in both their petition and brief, any attempt to invade the discretionary powers of the commission; "on the contrary," the brief reads, "the threatened contracts are sought to be reprobated because they are illegal—made or threatened to be made without authority of law, and therefore not a place for the exercise of any sort of discretion."

The main controversy, therefore, as regards the second count of the petition revolves around the question whether it unequivocally alleges facts which, if true, constitute an illegal abuse of power by the commission.

The specific allegations of the petition supporting its general allegations to the effect that the appropriation for the department had already been exhausted, read:

"12. For the purpose of being as specific as is possible, this plaintiff would show that the funds available to the Commission for all pur-

poses under the law, for the fiscal year, ending August 31, 1933, are approximately as follows:

"Estimated receipts from all state sources upon the basis of actual receipts for previous years to August 31, 1933, $21,126,000.00.

"Federal Aid Available, $1,300,000.00.

"Amount cash in State Treasury, $8,123,-432.35.

"Total Available Funds for fiscal year, ending August 31, 1933, $30,549,432.35.

"The foregoing estimate of available funds is predicated upon the comparative value of previous receipts as a basis for estimate and the same is believed and alleged to be a just, fair and reasonable statement of the available funds in controversy.

"As against said above estimated total of available contract funds for the fiscal year, ending August 31, 1933, plaintiff would show that there should be charged and held against the same, the following items and amounts which plaintiff alleges upon information derived from authentic sources, which he believes to be true and so alleges to be accurate and true, the following:

"Highway Construction contracts outstanding, unpaid, $17,173,748.23.

"Estimated one-fourth Occupation Tax on sales of gasoline to the County & Road District Highway Fund, $8,200,000.00.

"Estimated cost of Highway Maintenance to end of fiscal year, $8,700,000.00.

"Equipment to end of fiscal year, $533,334.-00.

"For general administration, parole, etc., $487,391.70.

"Motor patrol and miscellaneous to end of fiscal year, $350,000.00.

"State Highway Building contract, $250,-000.00.

"Total estimated charges and liabilities for fiscal year, ending August 31, 1933, $35,694,-473.93.

"Difference between estimated assets and liabilities, deficit, $5,145,041.58."

The affidavit to the petition reads:

"I, James E. Ferguson, one of the plaintiffs named in the foregoing petition, whose name is subscribed to the foregoing petition, upon my oath do say that I have read over the foregoing petition and that the allegations of fact therein are true and correct and that where facts or matters are alleged upon information and belief or upon estimate, that I verily believe the same to be true."

As respects at least two of the items in the tabulated estimates, no arbitrary abuse, if any abuse at all, of discretion is shown. The estimated receipts from all state sources is based "upon actual receipts for previous years to August 31, 1933." The statutes do not prescribe the basis for such estimates, and there is no rule of law which would require the commission to limit their estimates to the amount of receipts for previous years. It is not alleged that the commission adopted this basis, nor is it alleged that the commission's estimate on this item was. Before the action of the commission could be classed as illegal, it would have to be shown by specific fact allegation that the basis it employed in this matter was so unreasonable as to amount to an arbitrary abuse of its delegated discretion.

The other item is "Estimated cost of Highway Maintenance to the end of the fiscal year." It is not alleged whether this item had already been contracted either in whole or in part, nor is it alleged whether this estimate was that of the commission itself. The amount of future maintenance, other than that already contracted, was clearly a discretionary matter with the commission.

The amounts of all of the disbursement items are alleged "upon information derived from authentic sources which he (affiant) believes to be true." What such sources are is not alleged, and the allegations afford no means for their ascertainment. "Authentic" in some of its uses has a technical meaning, but when applied to sources of information in the instant connection, neither the law nor the lexicographers give it a meaning which would require its acceptance here as conclusive. In a matter of this gravity we are not at liberty to resort to surmise to ascertain the meaning of the pleader. The allegation, and the supporting affidavit to the petition, amount to no more than the ordinary verification upon information and belief, which by an unbroken line of authority in this state is held to be insufficient compliance with R. S. art. 4647 to support a writ of injunction. Graham v. McCarty, 69 Tex. 324, 7 S. W. 342; Spinks v. Mathews, 80 Tex. 373, 15 S. W. 1101; Clarey v. Hurst (Tex. Civ. App.) 136 S. W. 840; Kopplin v. Ludwig (Tex. Civ. App.) 170 S. W. 105; Ginther v. De Zabalgoitio (Tex. Civ. App.) 170 S. W. 793; White v. Ferris (Tex. Civ. App.) 186 S. W. 367; Butler v. Remington (Tex. Civ. App.) 230 S. W. 224; West Texas Abstract & Guaranty Co. v. Stolte (Tex. Civ. App.) 256 S. W. 632; City of Arlington v. Dallas-Fort Worth Safety Coach Co. (Tex. Civ. App.) 270 S. W. 1094; State Banking Board v. Smyth (Tex. Civ. App.) 2 S.W.(2d) 536.

It may not be amiss at this point to advert to the fact that in support of the sufficiency of the second count of the petition, appellees invoke the rule that as against a general demurrer every reasonable intendment is indulged in favor of the sufficiency of the pleading. This is the general rule, but it does not apply to applications for injunction. There, the rule is that "the averments of material and essential elements must be sufficiently certain to negative every inference of

160

the existence of facts under which petitioner would not be entitled to relief." Gillis v. Rosenheimer, 64 Tex. 246; Birchfield v. Bourland (Tex. Civ. App.) 187 S. W. 422; Grayson County v. Harrell (Tex. Civ. App.) 202 S. W. 160; Miller v. Ballinger (Tex. Civ. App.) 204 S. W. 1173; Emde v. Johnson (Tex. Civ. App.) 214 S. W. 575, 578 (error refused); Wilkening v. Wolff (Tex. Civ. App.) 220 S. W. 598.

 Manifestly this rule should apply where the sole basis of the trial court's order is the allegations of the petition, which in such event perform the functions of both pleading and evidence. This is the underlying and manifestly sound basis for the construction of R. S. art. 4647, which requires that "the verification must be direct and in such positive terms as would sustain a charge of perjury or false swearing, if the verification should prove to be false." City of Arlington v. Dallas-Fort Worth Safety Coach Co. (Tex. Civ. App.) 270 S. W. 1094, 1095, and authorities therein cited.

 The highway department is one of the most important departments in the state government. Especially is this true as regards the volume of state revenue it disburses and the vast interests that are vitally concerned in its proper functioning. It would probably be difficult to find a citizen of the state who has not a direct concern in the affairs it administers, and this is certainly true as regards taxpaying citizens. To the members of the commission and in large measure to its chief engineer are intrusted responsibilities of outstanding importance. To meet these responsibilities they are invested with a wide discretion. This is of necessity so from the very nature of their duties. To properly discharge such duties they would perforce be required to make careful investigation from all competent and reasonably available sources in determining the bases for their action and for estimates from which to ascertain the bounds of their authority. As public officials they are presumed to exercise their authority and perform their duties honestly, conscientiously, and efficiently. The commission is required to keep records of all its doings (R. S. arts. 6665 and 6666); to maintain an office "at Austin where all its records shall be kept" (R. S. art. 6663); to submit biennial reports to the Governor and Legislature (R. S. art. 6665); "these records shall be open to public inspection" (R. S. art. 6665). Much, if not all, of the data embraced in the items listed in the petition should properly be shown by these records which are readily accessible to any one seriously interested in their contents. In matters of judgment touching the commissioners' functions, theirs, and not that of another, is supreme. Certainly their acts other than those of a purely ministerial nature should not be stayed at the hands of the courts, and the important functions of the de-

partment thereby impeded or impaired, except upon verified allegations of fact showing unequivocally that they are exceeding the bounds of their legal authority; and as certainly: Their acts "in the exercise of an honest discretion, must be respected when untainted by fraud and unassailed on account of accident or mistake occurring in their performance, or such abuse of discretion as under the authorities would avoid the same. Heathman v. Singletary (Tex. Com. App.) 12 S.W.(2d) 150; Porter v. Johnson (Tex. Civ. App.) 140 S. W. 469; Smith v. Ernest, 46 Tex. Civ. App. 247, 102 S. W. 129." Nairn v. Bean (Tex. Com. App.) 48 S.W.(2d) 584, 586.

Upon these considerations we sustain appellants' three propositions above quoted.

The order appealed from is set aside, and the temporary injunction is dissolved.

Order set aside; injunction dissolved.