# Case No. 15,740.

## UNITED STATES v. MATHOIT.

### [1 Sawy. 142; [2] 11 Int. Rev. Rec. 158.]

District Court, D. Oregon.   April 20, 1870.

#### INTERNAL REVENUE — DISTILLER — PROOF OF VIOLATION OF LAW—SETTING ASIDE VERDICT.

1. Section 44 of the act of July 20, 1868 (15 Stat. 142), is applicable to any person who distils spirits (15 Stat. 150) without having paid the special tax therefor, or given bond, as required by law, whether such person has registered his still or given notice of his intention to engage in the business or not.

2. Where unstamped spirits are found in the premises of the defendant which contain the machinery and appliances for distilling spirits, this fact unexplained is sufficient to justify the jury in finding that such spirits were distilled on the premises, and since the last inspection of them by the gauger.

3. Jury instructed that the evidence would justify them in finding that certain premises

and still continued to be the property of the defendant, as before then stated by him in his act of registry and notice of intention to distill, and therefore were employed in the illegal distillation in question, with his consent and for his benefit.

4. When it is shown that certain property belongs to a particular person, the law presumes that the ownership remains unchanged, until the contrary appears.

5. A correct verdict should never be set aside on account of supposed or actual error in the process or means by which it was obtained.

This was an indictment [against Edward Mathoit] under section 44 of the act of July 20, 1868 (15 Stat. 142), for carrying on the business of a distiller, without having paid the special tax therefor, or given bond, as required by law. On March 18, the case was tried upon the plea of not guilty, when the jury found the defendant guilty as charged in the indictment, and recommended him to the mercy of the court. Afterwards, a motion for a new trial was argued by counsel, and taken under advisement.

J. C. Cartwright, for plaintiff.
David Logan, for defendant.

DEADY, District Judge. Section 44 of the act of July 20, 1868 (15 Stat. 142), provides: "That any person who shall carry on the business of a distiller * * * without having paid the special tax as required by law, or who shall carry on the business of a distiller without having given bonds, as required by law, * * * shall, for every such offense be fined not less than $1,000 nor more than $5,000, and imprisoned not less than six months nor more than two years."

On February 25, 1870, the grand jury of this district found an indictment against the defendant, Edward Mathoit, of Marion county, for violation of the above section. The indictment contains two counts. By the first, the defendant is accused of carrying on the business of a distiller, continuously between May 1, 1869, and February 14, 1870, without having paid the special tax therefor; and by the second with carrying on such business between the dates aforesaid, continuously, without having given the bond therefor, as required by law.

The defendant demurred to the indictment for that it did not state facts sufficient to constitute a crime. In support of the demurrer, counsel for the defendant argued that section 44 was not applicable to mere illicit distilling, but only where a party had registered his still and given notice of his intention to engage in the business, and then did so without paying the tax or giving the bond. Upon this construction of the act, and the fact, that the indictment did state that the defendant had registered and given notice of his intention to distill, it was claimed that the indictment was insufficient. The court overruled the demurrer, and the defendant pleaded "not guilty."

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Section 59 of the act defines a distiller in these words: "Every person who produces distilled spirits, or who brews, or who makes mash, wort, or wash fit for distillation or the production of spirits, or who by any process of vaporization separates alcoholic spirit from any fermented substance, or who making or keeping mash, wort or wash, has also in his possession or use a still, shall be regarded as a distiller."

If a person who does any of these acts is to be regarded as a distiller, it is too plain for argument that for the time being he must be regarded as being engaged in the business of a distiller, and in violation of section 44, unless he has paid the special tax and given the bond. And this must be so whether he has registered and given notice of his intention to distill or not. The neglect to perform these mere preliminary precautionary conditions, does not secure immunity from the weightier matters of the law—the obligation to pay the tax and give the bond. To support the charge of violating section 44, it is not necessary to aver or prove that the accused had registered his still, or given notice of his intention to distill, but only that he was engaged in the business of a distiller in any of the ways or by any of the means specified in the foregoing definition of a distiller, without having paid the special tax or given bond, as required by law. The grounds of the motion for a new trial are substantially, that the verdict is contrary to law and the evidence, and not warranted by either, and that the court misdirected the jury.

It appears from the evidence that the defendant and his father, quite an aged man, lived together on a farm in the immediate vicinity of Butteville, in the county and district aforesaid upon which, among other things, they had planted and cultivated a vineyard. On the premises there was a small building, situate on the side of a hill. The lower room was partly underground, and opened out on the lower side of the hill, and at the date of the indictment and for nearly a year previous, was used as a wareroom for wines and spirits. The upper room was used as a distillery, and contained the still hereinafter mentioned, and some mash-tubs, and the like.

On December 5, 1868, the defendant (by form 26) registered the still in question, to be used, and set forth therein that it was set up near Butteville, and that Edward Mathoit was the owner of the same; that its cubic contents were fifteen gallons; and that it was to be used to make grape brandy; and on March 10, 1869, he gave notice (by form 27) of his intention to engage in the business of distilling brandy from apples and grapes in the building owned by himself, near the village of Butteville, with one copper still, twelve inches in diameter and twenty-eight inches high, containing 13.07 gallons, and also some tubs, containing in all 68.25 gallons of fermenting material—grapes and apple pum-

ice; and that the premises on which the distillery were situate were owned by him. The defendant then paid the special tax and gave bond as a distiller for the remaining portion of the revenue year 1868, which expired on the last of April, 1869. No notice of change of ownership or intention to distill was given to the assessor after that, nor did any one pay any special tax, or give any bond on account of or in connection with this still or apparatus thereafter. About February 23, the collector seized the distillery and apparatus, and turned them over to the marshal to be proceeded against as forfeited, in this court. A judgment of condemnation has since been given against the property, no one appearing to claim it, together with 900 gallons of wine and 212 gallons of distilled spirits, seized on the premises at the same time. Among the packages of distilled spirits was one containing twenty-two wine gallons, which had been gauged and stamped for the defendant by Kilbourne, gauger of the district, in July, 1869, at which time the defendant told the gauger that he had no other spirits that needed stamping. The unstamped spirits were in five or six packages, and were 30 or 40 per cent. below proof, or about one third in volume of alcohol—proof spirits being one half in volume of alcohol.

On the argument of this motion, it was not contended that the proof was insufficient to justify the jury in coming to the conclusion that between the dates named in the indictment there had been spirits distilled on the premises, in violation of law. Upon this point the proof was ample and the jury could not have found otherwise than as they did. The simple fact of unstamped spirits being found on the premises, unexplained, was of itself sufficient to justify the verdict in this particular. But in addition to this there was the statement or admission of the defendant in July, 1869, that he had then no other unstamped spirits on hand, and the direct testimony of the three uncontradicted witnesses—Hugg, Higgins and Shipley—who at different times in the months of November and December, saw the defendant's father engaged in the room with the still in such a manner and under such circumstances that it was manifest and apparent to the dullest comprehension, that he was engaged in distilling spirits.

But no witness testifies that he ever saw the defendant personally engaged in operating the still or attending to it, and upon this point the argument for a new trial rests.

It is claimed that the proof was not sufficient to connect the defendant with the illegal distillation, and that the court erred and misled the jury in instructing them, that under the circumstances they were justified in finding that the premises and still continued to be the property of the defendant, as stated by him in his act of registry and notice of intention to distill, given March 10, 1869, and therefore were employed in the illegal dis-

tillation in question, with his consent and under his direction, and for his benefit exclusively, or in conjunction with his father.

To show the propriety of this instruction and the action of the jury under it, it will be necessary to briefly state the circumstances referred to in it.

As late as March 10, 1869, the defendant over his own signature claimed to the assessor that he was the sole owner of the premises and still. He paid the special tax, and gave the bond and operated it as his own until May 1, or that year. We find him on the premises with the gauger in July, 1869, acting as proprietor and procuring the inspection and stamping of the spirits he had distilled in March and April before. No evidence of any change of ownership is produced, nor of any change of circumstances of the party with reference to the property, or his location or employment, from which such change of ownership could fairly, or at all, be inferred. The defendant and his father continue to reside together, and the former is always found in or about the premises, or at work upon the farm. He employs Higgins to grub upon the farm. He sells Shipley the grape cuttings, and is in the wine cellar with him. In short, he appears to be the active managing man of the place, while the old man remains in doors and runs the still. No notice of change of ownership of the still was given to the assessor by any one. True, the failure to give this notice, although a penalty is thereby incurred, should not preclude the defendant in this action from showing the fact of such change, and the jury from so finding, if the evidence is sufficient, and so the court held and instructed the jury.

Besides these general considerations, there are some special circumstances disclosed by the testimony of the gauger and deputy assessor which tend to show that no change had taken place in the ownership of the property, and that the defendant was really engaged in operating the still.

Mellen, the deputy assessor for the division wherein the distillery was situated, testified that in pursuance of instructions from the assessor for the district, Mr. Frazer, he visited the distillery in question on February 14, 1870. First went into the dwelling house near by, where the defendant and his father were living together. After taking defendant's income return, he and defendant walked out to the distillery together. Went to the lower room or cellar, and tapped on some casks, and asked defendant what was in them. Defendant answered wine. Mellen replied that he had come to look after the distillery, and must examine the casks, and then did so, and found six casks to contain distilled spirits—apple or grape brandy—the same that was afterward seized and condemned as above stated. Deputy then said to defendant, thought he had got into a bad scrape, and had better go to Mr. Frazer's office in Portland, and see what could be done. Defendant said

he couldn't go for a day or two. Mellen said better go, and locked up the room, and they both came down to the assessor's office at Portland, then or the next day. While at the distillery, defendant said that he distilled these spirits under the old law. At Portland, after it was ascertained that the law must take its course, Mellen said to defendant that he ought to have had the spirits stamped when Kilbourne was up at the distillery, and then the defendant replied that they had been distilled within a month or six weeks. Upon cross-examination, this witness became embarrassed, and was unable to give, with any certainty, the time and place of the last statement attributed to defendant, and altogether his manner and conduct upon this point was such as justly to subject his testimony to criticism. But I am not prepared to admit by any means, what counsel so vehemently urged upon the jury, that on this account, the witness ought not to be believed. And whether he should be or not, and how far he was discredited in this respect, the jury were the judges. Yet I will take the liberty of suggesting that when a revenue officer is charged with as important matter as this, he ought to observe correctly, and be able to come upon the stand and testify concerning it distinctly —giving time and place to all material circumstances, and particularly to conversations with the parties accused or interested.

Kilbourne testified that in July, 1869, he inspected and stamped the spirits on the premises for the defendant, which were evidently those distilled by him in March and April, 1869. Kilbourne did not inspect or stamp any more spirits on or at these premises until the seizure above mentioned. In the fall of 1869, perhaps the last of October, the defendant met Kilbourne in Portland, when the latter asked the former about his distillery. Defendant said he had not commenced distilling, and asked witness if there had been any change of the law, to which Kilbourne replied that he did not know, and that defendant had better inquire at the assessor's office. Again, when defendant came to Portland with Mellen in February, Kilbourne met him and asked him if he was going to distill, or when he got through. Defendant answered that he had got through. K. replied: "I will have to go up then, soon" (meaning to distillery, to inspect and stamp spirits). Defendant said yes, and asked if law was same as last year. Kilbourne replied yes. Defendant then said he had got into trouble.

Thus, wherever we find the defendant, or with whomsoever conversing, he speaks and acts as if the distillery was his, and under his direction. The second conversation between him and Kilbourne, occurred the day after Mellen's visit to the distillery, when the defendant knew that he was in trouble and practically accused of the very crime of which he has been found guilty. It never occurred to him then, nor at any other time that we know of, until on this trial, to claim that he

was not the owner and operator of this still. On the other hand, if the property had been sold or transferred to his father, or his father was engaged in running the distillery without the defendant's authority or consent, and not for his benefit, there is evidence of the fact, and the defendant should produce it. It is a presumption of law, upon which the jury were bound to act, that when the ownership of property is shown to be in a particular person, it continues to be so until the contrary appears.

The father was present at the trial, and was referred to by counsel for defendant, as the party who had really done this illegal distilling. If so, why not call him as a witness. Under the act of congress of February 25, 1868 (15 Stat. 37), he could have been compelled to testify as to the matter, and his evidence could not have been used against him in any prosecution against himself. The omission to do this is itself sufficient to justify the jury in presuming that no change of ownership or management had taken place, and that the defendant was really engaged in the business of distilling, and employing his father to personally attend to the process for him. Upon this question, Mellen's testimony may be laid aside, and still upon the facts the jury could not have come to any other conclusion than they did.

Nor was this question withdrawn from the jury by the instructions of the court. For, while they were instructed that the ownership of the property was presumed to continue in the defendant until the contrary appeared, and that under the circumstances—the proof—they were justified in finding that the premises and still continued to be the property of the defendant, as stated by him to the assessor, they were also instructed that in subordination to the presumption of law just stated, they must determine that question for themselves.

But it is said that while the instruction did not profess to withdraw the question from the jury, as a matter of fact it was well calculated to, and possibly the jury may have mistaken the purport of it, and assumed without inquiry that the ownership of the property was in the defendant as a matter of law. I think this is a very improbable supposition, entirely too speculative to disturb the verdict of a jury upon. But if it were otherwise, as the verdict is undoubtedly correct, both as to law and evidence, it must stand. A correct verdict should never be set aside on account of error actual or supposed, in the process or means by which it has been obtained.

[Edward Mathoit indicted for distilling without having paid special tax and given bond; sentenced to imprisonment in county jail for one year, and to pay a fine of $2,000 and costs.] [2]