### EX PARTE HENRY CASTRO.

No. 4211.   Decided June 27, 1925.

(273 S. W., 795.)

**1.—Divorce—Re-marriage.**

A statute (such as Rev. Stats., Art. 4632, as amended by Act of March, 1921, Laws, 37th Leg., Ch. 82, p. 163) merely forbidding a second marriage by a divorced person within a certain time, but not declaring it void nor prescribing a penalty, renders such second marriage voidable only. (Pp. 79, 80.)

**2.—Same—Punishment for Contempt.**

A statute prohibiting a second marriage within a certain time after divorce does not authorize the judge decreeing the divorce to insert an injunctive order against such marriage in his judgment, nor to punish for contempt a party violating such unauthorized order. It was not proper to put into the decree that which would merely flow therefrom, its effect being matter of law.   (P. 80.)

**3.—Contempt—Habeas Corpus.**

Relator, who was imprisoned for contempt in contracting a second marriage in disregard of an order in the decree of divorce from his former wife forbidding so doing within a year, is, on habeas corpus, discharged from custody.   (P. 82.)

Henry Castro, imprisoned for contempt in violating an order of the District Court of Bexar County, Ninety-fourth District, obtained from the Supreme Court a writ of habeas corpus, and on hearing thereof is discharged from custody.

*J. R. Locke,* for relator. '

The District Court was without authority in the first instance to insert in said decree of divorce any stipulation against remarriage by the parties thereto, because the said Court had no jurisdiction, power or authority in the absence of express statutory authority therefor, to insert said provision in the said decree, and there exists no statutory authority in this State authorizing the District Court to make any such order. Barber v. Barber, 16 Calif., 378; People v. Prouty, 51 L. R. A. (N. S.), 1140; Pape v. Pape, 35 S. W., 479; Boyd v. Boyd, 54 S. W., 380; Bieler v. Bieler, 218 S. W., 553.

It has long been the settled law in this State that an amendment which seeks to inject into the body of a law any subject not comprehended by the title to the Act or the amendatory Act is unconstitutional and void. Gunter v. Mortgage Co., 82 Texas, 502, 17 S. W., 840; English, etc., Texas Mortg. Co. v. Hardy, 93 Texas, 289; Missouri, K. & T. Ry. Co. v. State of Texas, 102 Texas, 153, 113 S. W., 916; Ward Cattle & Pasture Co. v. Carpenter, 109 Texas, 103; Rodgers v. Tobias, 225 S. W., 804; American Indemnity Co. v. City of Austin, 112 Texas, 239, 246 S. W., 1019; Ex Parte Faison, 248 S. W., 343.

It is true that it has been held that a reference to the number of the article of the Revised Statutes is sufficient in the title of an Act amendatory thereof, but only as authority for an amendment germane to the subject treated in the article referred to. Gunter v. Texas Land Mortg. Co., 82 Texas, 502; English, etc., Texas Mortg. Co. v. Hardy, 93 Texas, 289.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This is a habeas corpus proceeding, in which Henry Castro applies for discharge from a judgment of the Ninety-fourth District Court punishing him for contempt.

The record shows that relator's confinement is based upon a judgment in contempt for having remarried within a year after a decree of divorce granted him on the 17th of August, 1923, on the ground of cruel treatment. The trial judge placed a clause in the decree, reading as follows:

"It is further ordered that neither party be permitted to marry within a year from this date, except to each other."

Henry Castro did marry within a year from the date of this judgment, and his former wife, Maria Castro, filed a motion in contempt and to dissolve the second marriage. This was heard on the 26th of June, 1924. The court declined to dissolve the second marriage, for reasons unnecessary to be stated, but did hold that relator was in contempt of court because he had violated the order quoted above from the divorce judgment, and entered a decree punishing him therefor.

Revised Statutes, Article 4632, as amended by Chapter 82, General Laws of the Thirty-seventh Legislature, contains this provision:

"And provided further that neither party to a divorce suit wherein a divorce is granted upon the ground of cruel treatment shall marry any other person for a period of twelve months next after such divorce is granted, but the parties so divorced may marry each other at any time."

The statute simply forbids the second marriage within a year's time under certain circumstances, without declaring it void or providing any other form of punishment, and without authorizing the District Court to insert any prohibitive or injunctive order relative to the same. Concerning this character of statute Mr. Schouler in his late work, 6th edition, on Marriage and Divorce, Volume 2, Section 1924, says:

"Where one marries again although not permitted to do so, the second marriage may be void, or merely voidable.

"Marriages by divorced persons are commonly held void if entered into within the period after the decree when marriage is prohibited where this period is the time for appeal, or where the statute expressly declares such a marriage void, but where the statute simply forbids such a marriage without declaring it void it will not be so held, as the law favors the validity of marriages wherever possible.

"The great majority of the statutes prohibiting marriage within a certain time after divorce do not expressly declare whether such marriages within such time are void or voidable, and such statutes fall within three clases: those which merely prohibit marriage within a certain time, those which declare the act of marriage criminal and provide a penalty, and those which declare the parties 'incapable' of remarrying within such period. The prohibited marriage of the first class is usually declared voidable only, and the other two classes are usually held void."

It is thus seen that statutes of the character before us do not make a second marriage void, but merely voidable. The text of Mr. Schouler is supported by the great weight of authority. Wallace v. McDaniel, 59 Ore., 378, L. R. A. 1916C, p. 744, and elaborate notes at the end of this case; Woodward v. Blake, 38 N. D., 38, L. R. A. 1918A, p. 88.

Since the language of the statute is sufficient only to make a marriage in violation of it voidable, it is obvious that the statute had no purpose to authorize the court to secure obedience thereto by the insertion of an injunctive order such as is before us. The penalty is that the second marriage may be annulled in a proper case at the suit of one having a justifiable interest therein, and not punishment for contempt. However, aside from the proposition just stated, which is a reason only for the conclusion that the district judge was without authority to insert in the order any such prohibitory language, it is well settled that statutes of this character do not authorize the trial judge to insert such an injunctive order in the decree, and that the violation of such an order improperly placed in the judgment does not render the party liable for contempt. Mr. Bishop in his work on Marriage and Divorce, Volume 2, Section 1521, discusses what should be in the divorce decree. In part he says:

"Both in natural propriety and in juridical reason, the sentence should be an embodiment, in direct words, of the determination of the court upon the combined pleadings and the admitted and proven facts, when all have been duly produced by the parties, passed upon by the jury if necessary, and considered by the judge. What will flow from the sentence as of law ought not to be inserted in it; for the court has no control over such a matter, and an attempted determination thereof would be simply an extra-jurisdictional impertinence."

In the paragraph quoted from Mr. Bishop's work it is stated in substance that it is not proper to put in the decree that which would flow from the judgment; that the effect of the judgment is a matter of law, and not of decree.

Again, in Section 1523 he says:

"If the statute forbids the party for whose fault a divorce is declared to remarry, plainly the court cannot with effect introduce into the decree a clause permitting him. But Chancellor Walworth used always to insert the prohibiting clause, as being, to quote his own words, 'necessary in order to prevent him from imposing upon others, who might suppose he was capable of contracting matrimony if the decree was general.' This care

for foolish spinsters, to whom it was presumed the man would be showing the judicial record of his own adulteries as the inducement to marry him, is admirable in philanthropy. But it is quite aside from the function of a legal judgment to notify third persons of what all are presumed to know, the contents of the statute-book of the State. There is no pretense that the clause is of any legal validity, or in any way essential to the complete efficacy of the divorce sentence. And it is not believed to be common."

It is quite elementary that a court of equity has no authority to issue an injunction, unless some property right is involved, or some other right which would bring it within the usual rules of equity jurisdiction, or unless it is provided for by statute.

It is plain in this case that there was no statute authorizing the injunctive order. It is equally clear, we think, that there is no principle of equity jurisprudence which would authorize a court trying a divorce case to prohibit the parties from marrying again for any period of time.

In the case of People v. Prouty, 262 Ill., 218, 51 L. R. A. (N. S.), p. 1140, the Supreme Court of Illinois, in discussing a statute of this character, says:

"The only effect of the prohibition against marriage contained in this decree is to enjoin the parties from violating this statute. A court of equity exercising its general powers has no jurisdiction over matters merely criminal or immoral, where no property rights are involved. 'It is elementary law that the subject-matter of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral which do not affect any right to property.' "

Again, the court in the same case says:

"If, then, a court of equity, in the exercise of its general equity powers, has no jurisdiction to enter such an injunctional order, it cannot be contended that the circuit court, in exercising its jurisdiction in cases of divorce, has the power to enter such an order unless that power is expressly given by the statute. It is not expressly given. The mere fact that the Legislature saw fit to enact this section as an amendment to the divorce act instead of the Criminal Code or the marriage act does not warrant the circuit court in making such an order. The court being without jurisdiction to enter the order, it was

void, and plaintiff in error was not in contempt in disobeying it."

Since the order prohibiting the relator from marrying within one year after the original divorce proceeding was entered without any authority on the part of the court, and is therefore void, it follows that the relator cannot be punished as for contempt for violation thereof. 9 Ruling Case Law, p. 438.

Other interesting questions are raised in the application, including the constitutionality of the statute involved. Under the view we take of the case, it is unnecessary to discuss these questions, and their decision is pretermitted until a case arises which necessarily involves them.

The relator is discharged.