**SHEPPARD et al. v. OWL REFINING CO. et al.**

No. 8093.

Court of Civil Appeals of Texas. Austin.

Feb. 7, 1934..

Rehearing Denied Feb. 21, 1934.

James V. Allred, Atty. Gen., and R. G. Waters and Willis E. Gresham, Asst. Attys. Gen., for appellants.

Wm. J. Gerron, of Tyler, and J. W. Wheeler and Ghent Sanderford, both of Austin, for appellees.

McCLENDON, Chief Justice.

Appeal from an interlocutory order granted without notice, temporarily enjoining the comptroller and Attorney General from enforcing the permit and bond requirements (Vernon's Ann. Civ. St. arts. 7065a—3, 7065a —6) of the Motor Fuel Tax Law (chapter 44, p. 75, Gen. Laws, Reg. Sess. 43d Leg., 1933 [Vernon's Ann. Civ. St. arts. 7065a—1 to 7065a—18; Vernon's Ann. P. C. art. 141a—1]), against Owl Refining Company; and from instituting or prosecuting criminal proceedings against its officers for violations of the penal provisions of the act.

■ The validity of the tax imposed by the act is not questioned; but the constitutionality of its permit and bond requirements is attacked upon several grounds:

Since the act is a revenue measure only, taxing a lawful business not affected with a public interest, it is urged that the requirement of a permit as a prerequisite to engaging in the business violates the due process of law provisions of the state and Federal Constitutions (Const. Tex. art. 1, § 19; Const. U. S. Amend. 14).

This asserted invalidity is predicated upon the decision of the Supreme Court of the United States in New State Ice Co. v. Liebmann, 285 U. S. 262, 52 S. Ct. 371, 76 L. Ed. 747, and other decisions of like tenor holding invalid as violative of the due process of law provision of the Fourteenth Amendment of the Federal Constitution, statutes requiring a certificate of convenience and necessity as a prerequisite to engage in a business which is not affected with a public interest. No such certificate is required under the act in question. It is concededly purely a revenue measure, and the requirement of a permit is manifestly an enforcement regulation which every one complying with the provisions of the act is entitled as a matter of right to receive upon application, and which the comptroller has no discretion to deny where the statutory prerequisites have been complied with. There is no analogy between this requirement and the requirement of a certificate of convenience and necessity, the purpose and effect of which is to limit the number of those engaged in a particular business, and to vest in some official or board the power to withhold such certificate in the public interest. No authority is cited by appellees, and our research has disclosed none which denies to the state the power to require a permit as a regulation to facilitate the collection of a tax which it is conceded the state has the right to impose.

■ The bond requirement is assailed for a like reason; and for a like reason we uphold it. It is an enforcement measure designed to secure the state in the collection of its revenues derived from a tax which, from its very nature, is peculiarly subject to evasion and to fraudulent defeat in its collection.

While a number of cases may be found in which liability upon bonds of this character has been enforced (see State v. Rodecker, 145 Mo. 450, 46 S. W. 1083; State v. Lumber Co., 161 Mo. 664, 61 S. W. 869), the power of the state to exact the bond as a prerequisite to engaging in a business not subject to police regulation as being affected with a public interest appears to have been rarely questioned. In the well considered case of State v. Harrington, 68 Vt. 622, 35 A. 515, 34 L. R. A. 100, a requirement of itinerant vendors as a prerequisite to a license to deposit $500.00 with the State Treasurer, to be returned on surrender of the license, less the amount of any fines and costs that might have been imposed, was held not to be violative of the due process of law provision of the Federal Constitution. There are many decisions which uphold the requirement of a bond to protect creditors or others dealing with individuals or corporations engaged in businesses which afford unusual opportunity for imposition upon the public through fraud, breach of trust, and the like. See case notes in 3 A. L. R. page 1271 et seq., and 48 A. L. R. page 449 et seq.

We see no valid reason for withholding from the state the power to secure in this manner its revenues which are of such character as to afford ready opportunity for evasion and defeat unless protected by reasonable and proper safeguards.

It may also be noted, that while in a strict legal sense the distributor is not a fiduciary, collecting and holding the tax in trust for the state, the act itself in effect passes the tax on to the consumer in the provision (section 2 (g), Vernon's Ann. Civ. St. art. 7065a—2 (g) that "the tax herein imposed shall be post-

ed separately from the price of the motor fuel, wherever sold in this State." The state might have imposed upon the distributor the duties and obligations of a fiduciary; in which event its right to exact security could hardly be questioned. Its right to exact security even though the tax obligation be only a simple debt, is supported by equally cogent reasoning when considered in the light of the opportunity which the nature of the business affords for evasion and fraud.

■ It is stated in the petition that the amount of bond required "tends to create a monopoly for those known and called the Major Oil Companies similarly engaged by forcing out of the business such Independents and Plaintiffs herein." This is a mere general allegation which is not otherwise supported by any factual statement. The mere fact that a regulation otherwise reasonable and appropriate to the enforcement of a valid tax may operate harshly or oppressively upon some who are engaged in the affected business would not of necessity invalidate the regulatory requirement. However, there is no showing that such would in fact be the effect of the regulation, other than the bare statement thereof. The minimum bond required is $1,000. Provision is also made for the deposit of cash or approved securities in lieu of the bond; and the comptroller is also authorized to require a proportionately less bond where, in his judgment, returns might properly be allowed for shorter periods than the calendar month. The minimum bond would cover a tax on 25,000 gallons of gasoline. The act requires return and payment on the 20th day of each month for the previous calendar month. In so far as appellee corporation is concerned, the petition alleges that it distributes more than 1,000,000 gallons per month; the tax on which would amount to upwards of $40,000. It is not alleged that it could not comply with the bond or deposit provisions of the act; and it is hardly conceivable that a concern doing this amount of business would be seriously hampered even if it were required to furnish the maximum security, which would fall short by upwards of $15,000 of securing the amount of tax it would monthly owe the state. It should also be noted in this connection that the act itself provides (section 2(e), Vernon's Ann. Civ. St. art. 7065a—2(e) that "one per cent (1%) of the taxable gallonage shall be deducted by the distributor to cover losses and the expense of complying with the provisions hereof." The manifest purpose of this provision is to relieve the distributor of the cost entailed by compliance with the act, including the cost of obtaining the requisite security, and to impose such expense, as cost of administration upon the state in the form of a deduction from the tax.

■ The further point is made with reference to the bond requirement that it vests an arbitrary, uncontrolled, and unreviewable discretion in the comptroller in fixing the amount of the bond. It is insisted in this regard that no criteria are prescribed in the act to govern the comptroller in fixing the amount. This contention, we think, is unsound. Numerous statutes vesting discretion of like character in administrative officers have been upheld. See case note V., 48 A. L. R. page 454.

The act provides for "a good and sufficient" bond. "Good" manifestly has reference to the solvency and ability to respond of the surety; while "sufficient" relates to the amount and is referable to the purposes for which the bond is given, namely, to secure the state in the payment of its tax.

In the recent case of New York Central Securities Corp. v. United States, 287 U. S. 12, 53 S. Ct. 45, 48, 77 L. Ed. 138, an Act of Congress which conferred power upon the Interstate Commerce Commission to authorize control by one carrier of another where the commission should find that such "will be in the public interest," was attacked on the ground "that the stated criterion is uncertain." In disposing of this objection, the court, speaking through Chief Justice Hughes, say:

"That criterion is the 'public interest.' It is a mistaken assumption that this is a mere general reference to public welfare without any standard to guide determinations. The purpose of the Act, the requirements it imposes, and the context of the provision in question show the contrary. Going forward from a policy mainly directed to the prevention of abuses, particularly those arising from excessive or discriminatory rates, Transportation Act [February 28] 1920 (41 Stat. 456), was designed better to assure adequacy in transportation service. This Court, in New England Divisions Case [Akron, C. & Y. R. Co. v. United States], 261 U. S. 184, 189, 190, 67 L. Ed. 605, 609, 43 S. Ct. 270, 273, adverted to that purpose, which was found to be expressed in unequivocal language: 'to attain it, new rights, new obligations, new machinery, were created.' The Court directed attention to various provisions having this effect, and to the criteria which the statute had established in referring to 'the transportation needs of the public,' 'the necessity * * * of enlarging (transportation) facilities,' and the measures which would 'best promote the service in the interest of the pub-

lic and the commerce of the people.' Id., page 189, of 261 U. S., 43 S. Ct. 270, 273, 67 L. Ed. 605, note. See, also, Texas & P. R. Co. v. Gulf, C. & S. F. R. Co., 270 U. S. 266, 277, 70 L. Ed. 578, 583, 46 S. Ct. 263. The provisions now before us were among the additions made by Transportation Act, 1920, and the term 'public interest' as thus used is not a concept without ascertainable criteria, but has direct relation to adequacy of transportation service, to its essential conditions of economy and efficiency, and to appropriate provision and best use of transportation facilities, questions to which the Interstate Commerce Commission has constantly addressed itself in the exercise of the authority conferred. So far as constitutional delegation of authority is concerned, the question is not essentially different from that which is raised by provisions with respect to reasonableness of rates, to discrimination, and to the issue of certificates of public convenience and necessity. Inter-Mountain Rate Cases [United States v. Atchison, T. & S. F. R. Co.], 234 U. S. 476, 486, 58 L. Ed. 1408, 1422, 34 S. Ct. 986; Railroad Commission v. Southern P. Co., 264 U. S. 331, 343, 344, 68 L. Ed. 713, 717, 718, 44 S. Ct. 376; Avent v. United States, 266 U. S. 127, 130, 69 L. Ed. 202, 204, 45 S. Ct. 34; Colorado v. United States, 271 U. S. 153, 163, 70 L. Ed. 878, 883, 46 S. Ct. 452; Chesapeake & O. R. Co. v. United States, 283 U. S. 35, 42, 75 L. Ed. 824, 829, 51 S. Ct. 337."

The situation here is not essentially different. The stated criterion is a "sufficient" bond, which manifestly has relation to adequacy of security to the state in the collection of the tax imposed by the act. The action of the comptroller in fixing the amount of the bond is necessarily limited and circumscribed by this objective, and his arbitrary action in fixing an amount having no reasonable relation to this objective, is subject to judicial review in like manner as the arbitrary and unreasonable acts of ministerial officers generally in the discharge of their discretionary duties.

The penal provisions of the act are assailed as invalid on two grounds:

1. That the Legislature has not the power to make it a crime to engage in a lawful business, not affected with a public interest, without taking out a permit.

2. That the punishment prescribed is violative of article 1, § 13, of the Constitution inhibiting the imposition of excessive fines and the infliction of cruel or unusual punishment.

The first of these contentions is overruled upon the authority of South v. State, 72 Tex. Cr. R. 381, 162 S. W. 510, wherein the subject is ably discussed from its various angles. For further discussion and citation of authority see Rosenbloom v. State, 64 Neb. 342, 89 N. W. 1053, 57 L. R. A. 922; Salt Lake City v. Christensen Co., 34 Utah, 38, 95 P. 523, 17 L. R. A. (N. S.) 898; Mark v. Dist. of Col., 37 App. D. C. 563, 37 L. R. A. (N. S.) 440; 27 Tex. Jur., p. 913, § 67.

The second contention is equally untenable.

The penalties which are prescribed for infractions of various requirements of the act are a penitentiary sentence of not more than two years; or a jail sentence of not less than one nor more than six months; or a fine of not less than $100, nor more than $5,000; or both such fine and imprisonment. It will thus be seen that a very wide latitude is given in assessing a penalty, varying from a fine of $100, the minimum, to imprisonment for two years and a fine of $5,000, the maximum. Conceding the right of the state to penalize nonconformity to the act, it can hardly be seriously urged that there is anything excessive, cruel, or unusual in the prescribed penalties.

In addition to the urged invalidity of the act, it is alleged that the plaintiff company had a valid permit under which it was operating up to December 23, 1933; that on December 21, 1933, the comptroller notified it that its permit had been canceled and revoked; and that the comptroller and Attorney General had filed or caused to be filed complaints against the individual plaintiffs, officers of plaintiff corporation, for violating the provisions of the act; and were threatening additional complaints. It is alleged that the act of the comptroller in canceling the permit was without warrant; and further that plaintiff was not given the fifteen day's notice required by section 5 of the act (Vernon's Ann. Civ. St. art. 7065a—5).

It may be questioned whether the allegations are sufficient to support a temporary injunction granted ex parte, in that they do not negate the existence of facts which would authorize the comptroller to cancel the permit without notice, such as for the failure to comply with a requirement for more adequate security, or to give other security where the surety has exercised its right to withdraw from the bond. See Johnson v. Ferguson (Tex. Civ. App.) 55 S.W.(2d) 153,

at pages 159, 160; San Angelo Nat. Bank v. Wright (Tex. Civ. App.) 66 S.W.(2d) 804.

However that may be, and conceding the allegations sufficient to show an unwarranted cancellation of the permit, the allegations do not support a right to injunctive relief. The canceled permit would have expired on December 31, 1933, after which date it would have been essential, under the express terms of the act, to obtain a new permit for the year 1934, if plaintiff corporation desired to further carry on the business. The suit was filed January 1, 1934. There is no allegation that a permit had been applied for or refused for the year 1934. Consequently, the possibility of any further invasion of plaintiff corporation's property rights by proceedings instituted or threatened under and by reason of cancellation of the permit, had terminated on December 31, 1933; thus leaving as the only wrongful acts sought to be enjoined, criminal prosecutions instituted and threatened for infractions of the provisions of the act committed in 1933. The well-established equitable doctrine embraced in the following quotation from Ex parte Sterling (Tex. Sup.) 53 S.W.(2d) 294, 295, is adversely determinative of appellees' asserted right in this regard:

"Courts of equity are not concerned with the enforcement of criminal laws. Courts of law are created for this purpose. Courts of equity are concerned only with the protection of civil property rights. Therefore, when a court of equity issues an injunction which operates to stay the hand of law enforcing officers, its primary purpose is not to enjoin the criminal proceeding. That is merely incidental to the main ground upon which equity jurisdiction protects vested property rights from threatened and irreparable injury. Such jurisdiction is exercised solely with reference to the effect of the enforcement of a void law upon vested property rights. Winn v. Dyess (Tex. Civ. App.) 167 S. W. 294; Ex parte Castro, 115 Tex. 77, 273 S. W. 795; State v. Clark, 79 Tex. Cr. R. 559, 187 S. W. 760; Jones v. Whitehead (Tex. Civ. App.) 278 S. W. 305; City of Breckenridge v. McMullen (Tex. Civ. App.) 258 S. W. 1099."

The order appealed from is set aside and the temporary injunction is dissolved.

Order appealed from set aside; temporary injunction dissolved.

## On Appellees' Motion for Rehearing.

■ Appellees urge that we were in error in holding that under section 6(a) of the act

(Vernon's Ann. Civ. St. art. 7065a—6(a) the comptroller was "authorized to require a proportionately less bond when in his judgment returns might properly be allowed for a shorter period than the calendar month"; the contention being that the comptroller is given no discretion to require a smaller bond than $1,000. The portion of the act in question reads:

"Provided that the Comptroller shall have the authority at his discretion to permit any distributor to make reports and payments at shorter intervals than one (1) month, and in such cases to permit bonds based on the shorter intervals."

The language, "and in such cases to permit bonds based on the shorter intervals," can, we think, be given no other meaning than that it permits a proportionate reduction in the amount of the bond, which would necessarily apply to and reduce the minimum below $1,000 in a proper case. "Based on the shorter intervals" necessarily implies a just proportion; and to be just alike in all cases it would necessarily authorize reduction below the minimum in those cases where the minimum would be ample security to the state for the calendar month.

We are clear in the view, however, that the validity of the bond provision is not dependent upon this proviso, whatever be its proper construction. The proviso is but a further evidence of legislative solicitude directed toward making the act as little onerous as possible, consistent with proper security to the state in the collection of its revenues.

We are indebted to appellees' counsel for two additional citations supporting our holding sustaining the power of the state to exact a bond to secure an excise tax as a condition precedent to engaging in a business: Mason v. Rollins, 2 Biss. 99, 16 Fed. Cas. page 1061, No. 9,252, and U. S. v. Mathoit, 1 Sawy. 142, 26 Fed. Cas. page 1197, No. 15,740. These decisions are by Federal District Courts rendered in 1869 and 1870, respectively. They are concededly directly in point. The Rollins Case so clearly and concisely states the principles involved and their proper application, that we quote the following excerpts from the opinion:

"Under the constitution, congress has power to levy and collect taxes, duties, imposts and excise, and also the authority to make all laws necessary and proper to carry that power into effect. It may be admitted that in doing this congress cannot violate any rights secured by other provisions of the constitution, but, excepting this restriction, the

power is absolute. There is, as will be seen, power to collect the taxes, and that implies the use of all proper and necessary means to make the collection effectual. Property cannot be subject to unreasonable seizures, nor the house or person of a citizen subject to unreasonable searches; nor can he be deprived of his property without due process of law.

"As to the first special ground of complaint, requiring a bond as a condition precedent to the commencement of the business of rectifying or distilling: The right of congress to collect the tax being undoubted, everything that is produced by a distiller or rectifier may be subject by law to the tax. Congress has the right to render the collection of the tax due upon that business or product effectual, and if it is seen that the character of the business is such that irresponsible parties may engage in it, under the direction of capitalists who are in the background, and who thus seek to avoid the proper responsibility which belongs to them, and in this way to render it uncertain that the tax due upon the product shall be made available to the government, there can be no doubt, I think, that. as a means of accomplishing that result, congress may require a bond of the person who proposes to engage in that kind of business. The question must always be, whether, under the circumstances of the case, it is a reasonable condition, and I cannot say that it is not in this case."

The other points in the motion are sufficiently elaborated in our original opinion.

Overruled.

The motion is overruled.