### GRESS v. GRESS.
#### No. 11941.

Court of Civil Appeals of Texas. Galveston.
March 18, 1948.

Rehearing Denied March 18, 1948.

Hutcheson, Taliaferro & Hutcheson and Thad T. Hutcheson, all of Houston, for appellant.

Frank E. Mann and Kenneth H. Aynesworth, Jr., both of Houston, for appellee.

CODY, Justice.

This suit was brought under R.C.S. Art. 4628 by appellant on May 19, 1947, against appellee to annul the marriage relation that was contracted by them on December 13, 1946. The impediment urged by appellant as rendering the marriage contract void, within the meaning of aforesaid statute, was the disability imposed on appellee by R.C.S. Art. 4640, to contract a new merriage within twelve months after April 1, 1946, the date she was decreed a divorce from her former husband on the grounds of cruelty.

Appellant's petition, so far as deemed material to present the material issues, was to the effect that following the purported marriage he and appellee lived together some three months when they separated permanently about March 15, 1946; that at the time the ceremony was performed and until a short time before the filing of his petition, he did not know of the impediment which prevented appellee from forming a valid marriage; that had he known thereof he would not have attempted to marry her; that immediately upon learning of appellee's impediment (i. e., that she obtained a divorce upon the ground of cruelty, and learned that the law forbad marriage thereafter for twelve months except as between the parties to such divorce) "plaintiff assumed and has consistently maintained the position at all times material hereto that his marriage is not valid in law, but is subject to legal dissolution and that same should be dissolved and declared null and void; * ' * *."

Appellee's answer, so far as material on appeal, was to the effect that after a regular ceremonial marriage was performed on December 13, 1946, she and appellant lived together as man and wife until March 15, 1947, when because of appellant's conduct they separated; that because of their marriage and the assumption by the parties of marital relations, the plaintiff is thereby and now estopped. She further alleged: That appellant knew of her divorce of April 1, 1946; that he knew of the nature of the pleadings in that cause and discussed same with appellee; that he persistently proposed marriage to her, and when his proposal was accepted, he obtained the license, caused the ceremony to be performed; that he lived with appellee as stated until March 15, 1947, when he became angry because appellee refused his request to sell her property and provide him with funds for his own use. That after the separation appellant sought to have appellee get a divorce, and made a separation agreement, etc.

The Court, trying the case without a jury, refused to annul the marriage. Thereafter in response to appellant's request, the court filed conclusions of fact and law. Among the findings of fact were these: (3) After months of wooing, appellant finally persuaded appellee to marry him. Then, about December 11, 1946, appellant phoned his former home in Chicago, where his former wife had divorced him, and learned upon such inquiry that such divorce against him had become final. (4) Appellee then phoned the lawyer who had represented her in her divorce suit and was told that there was no reason why she should not then marry. (5) That previous to her

marriage with appellant, appellee had fully discussed the facts of her divorce with him. (6) That after appellant and appellee were formally married, and when they were cohabiting as man and wife, he tried to persuade her to sell her house and turn the money over to him. Thereafter she refused to live with him because he failed to support her and sought to dissipate her property. (7) Thereafter appellant offered to make a settlement on appellee if she would divorce him, but the parties could not come to terms. The Court found among other things that appellant finally left appellee about the middle of March, 1947.

The Court made certain additional findings at the request of appellant, and declined to make others, and declined as well to make certain requested amended findings. What the additional conclusions were which the court declined to make, whether of law or fact, we think it not necessary to set out.

Appellant predicates his appeal upon twelve points. Points 1-3, inclusive, complain of the court's refusal to make certain conclusions of law. Points 4-9, inclusive, complain of the court's action in making certain findings, and refusal to make certain others. Point 10 complains of the court's legal conclusion that appellant is estopped to have the marriage annulled. Point 11 complains that the judgment rendered is not sustained by the court's conclusions of fact and law. Point 12 asserts that the refusal of the court to annul the marriage was fundamental error. At this point it is proper to say that a finding by the court to the effect that appellant had no grounds for divorce against appellee could only have been considered by the court in connection with the point of appellant's good faith in bringing this suit. It is not res adjudicata of the right of appellant to bring an action for divorce.

In addition to asserting errors of practice and procedure by the trial court, it is here appellant's position that, upon his having pled and proved that appellee was divorced on the grounds of cruelty from another man on April 1, 1946, and that she had married appellant within less than twelve months thereafter, taken together with his pleadings and proof that he brought this suit for annulment within a reasonable time after he learned that appellee had married him in violation of Art. 4640, he had the unqualified legal right to annulment.

## Opinion.

It is the policy of the law to look with special favor upon marriage and to seek in all lawful ways to uphold this most important of social institutions. See 28 Tex.Jur. 732, et seq. "Accordingly in a proper case the presumption of death of a former spouse or a divorce from a former marriage will be applied to support the regularity of a marriage shown to have been consummated." Id. Again it is said in the valuable work quoted from, Vol. 28, page 731, "Even though the divorce statute (i. e., R.C.S. Art. 4640) declares that neither party to a decree granted upon the grounds of cruel treatment shall marry any other person for a period of twelve months next after the divorce is granted, a marriage contracted within such period is not void. The decree is final, and not interlocutory, * * *." "* * * Where, however, the marriage is induced by fraud, deception or duress, or entered into by one incapable legally * * * of assenting * * * the marriage is at most only voidable, and is a valid subsisting marriage for all purposes until annulled by a proper decree of a court. It is precisely the same situation as where legal grounds for a divorce exist. The marriage is valid until dissolved by decree." Id. Again, at page 725, the same text after stating that marriage contracts inducing and supporting a marriage may be rescinded upon equitable grounds further says "In all cases of this kind, however, the courts are quick to look for acts of waiver or condonation, as a strong public policy supervenes with respect to maintaining marriages."

Again, in the case of Nixon v. Wichita, etc., Co., 84 Tex. 408, 19 S.W. 560, 561, the Supreme Court quoted with approval language showing the strong public policy in favor of upholding the marriage relationship, as follows: " 'Every intendment of law is in favor of matrimony.

When a marriage has been shown in evidence, whether regular or irregular, and whatever the forms of the proofs, the law raises a presumption of its legality, not only casting the burden of proof upon the party rejecting, but requiring him throughout in every particular plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. * * * It being for the highest good of the * * * community that all intercourse between the sexes in form matrimonial should be such a fact, the law, when administered by enlightened judges, seizes upon all probabilities, and presses into its service all things else which can help it in each particular case to sustain the marriage and repel the conclusions of unlawful commerce.' 1 Bish.Mar.& Div. (6th Ed.), § 457." See also Carter v. Green et al., Tex.Civ.App., 64 S.W.2d 1069, writ refused.

 It is quite clear in this case that appellee violated R.C.S. Art. 4640 when she married appellant. This rendered the marriage voidable. Ex parte Castro, 115 Tex. 77, 80, 273 S.W. 795, 796. And of course the annulment statute R.C.S. Art. 4628 uses the word "void" so as to include "voidable." 28 Tex.Jur. 728. The annulment statute provides, "The marriage relation may be dissolved where the causes alleged therefor shall be natural or incurable impotency of body at the time of entering into the marriage contract, or any other impediment that renders such contract void, and the court may decree the marriage to be null and void."

It cannot be questioned that appellant had a justiciable interest in his marriage with appellee. In the Castro case, supra, the question was whether the trial court had authority to enjoin the parties to a cruelty divorce not to marry within twelve months. In holding against such authority the court said, "The penalty is that the second marriage may be annulled in a proper case at the suit of one having a justiciable interest therein, and not punishment for contempt."

We have reached the conclusion that appellant pled and proved that at the time of the marriage, December 11, 1946, appellee was subject to such an impediment that she could only contract a voidable or de facto marriage. Appellant's proof put appellee to her affirmative defense. She had not pled ratification, waiver or condonation as affirmative defenses, but had pled estoppel. The court found as a conclusion of law from his findings of fact that "the plaintiff knew before he married the defendant that she had obtained a divorce from her previous husband on the grounds of cruelty and is now estopped to annul this marriage."

A consummated marriage contract subjects the parties to the most important of social institutions, and the public policy which supervenes to maintain a marriage is correspondingly strong. For instance, by definition, a contract in violation of a mandatory law is malum prohibitum, and the courts hold such a contract void, not voidable. That is, except in case of legislation touching marriage, the courts very properly construe the intention of the legislature in forbidding the making of a contract to be that a purported contract which violates such legislation shall be void. But with respect to the provision of Art. 4640 in question, in the absence of a further provision therein that a marriage in violation thereof shall be void, our Supreme Court refused to declare such a marriage void, but merely voidable. Ex parte Castro, supra. The ultimate reason for such holding is of course that the pressure of the public policy for maintaining a marriage is so strong that it will not be assumed, in the absence of the legislature so stating, that it was the intention that the forbidden act should be void.

 It is well settled that "An agreement void as against public policy or because prohibited by law cannot be rendered valid by invoking the doctrine of estoppel." 17 C.J.S., Contracts, § 279. But the quoted rule does not apply to an agreement which is merely voidable because prohibited by law. In 17 Tex.Jur. pp. 129, 130, the language quoted therein from United Fidelity Life Ins. Co. v. Fowler, Tex.Civ.App., 38 S.W.2d 128, 131, is adopted as the language of the text. "The phrase 'estoppel by contract' is said to mean 'no more than that

a party is bound by the terms of his own contract until set aside or annulled for fraud, accident, or mistake.

■ " 'Estoppel by contract is not, strictly speaking, an estoppel in pais, because it lacks several of the essential elements of an estoppel in pais, but is regarded merely a form of quasi estoppel based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another.' "

■ Here the impediment to appellee contracting a marriage on December 13, 1946, was not a "diriment" impediment— not an impediment which would prevent the formation of a valid marriage. The marriage was not void though prohibited by Art. 4640, because the legislature had not seen fit to make a marriage in violation thereof void. So, being merely voidable, when contracted and consummated, the marriage contract was valid for all purposes unless or until appellant obtained a judgment of annulment or a judgment of divorce. Being a voidable contract, and one which was valid until voided by a judgment of a court in a suit brought for such purpose, it was subject like every voidable contract, to the defense of estoppel.

Prior to the time the parties contracted and consummated the marriage, appellee had informed appellant of the facts of her divorce. Thus there was no concealment, but a disclosure of the cause of the divorce. Neither party actually knew that Art. 4640 raised an impediment to appellee legally assenting to a marriage with appellant for a period of twelve months from the date of her divorce. As seen, the impediment did not prevent the formation of a marriage absolutely valid as against all the world, except those who had a justiciable interest therein. And, as we have seen, the impediment was insufficient to prevent a valid marriage as between the parties to it, though it was subject to attack as being voidable as between them in a proper case.

Both parties had, a short time prior to their marriage, been parties to divorce suits in which the divorce had been granted upon the grounds of cruelty; the appellant in Illinois, the appellee in Texas. They both appear to have been unsure if it was permissible for them to marry in view of their former divorces, and used the long distance telephone to find out. Appellant was present and listened in when appellee phoned the lawyer who had represented her in her divorce suit. Appellee testified that her reason for phoning her lawyer was to learn if it was all right for her to marry appellant. She testified that her lawyer told her "It was perfectly all right to go ahead and marry my boy friend".

■ Appellant then voluntarily married appellee knowing that her status was not such as prevented the marriage. It is true that his position is that he would not have married appellee had he known of Art. 4640. The court evidently believed that at the time of the marriage the extent of his concern in the matter was whether the parties could contract a marriage which was valid as against the world, and that his concern as to the impediment which was imposed on appellee by Art. 4640 was born of his desire to get rid of her through annulment proceedings after he desired to repudiate the marriage, and found the improbability of getting rid of her by divorce. The court, trying the case without a jury, found that appellant, with knowledge of the facts or cause of the former divorce, contracted and consummated marriage with appellee, and was estopped to have an annulment. We think the court did not err in concluding that appellant was estopped to have the voidable contract, which he entered into after he learned it would support the marriage, rescinded, and did not err in refusing to annul the marriage.

A careful consideration of appellant's motion for rehearing convinced us that our original opinion, which affirmed the judgment was erroneous. For that reason, our original opinion is withdrawn, and this opinion is substituted therefor, also affirming the judgment. We accordingly overrule points on original submission and on motion for rehearing except as they may have been sustained herein. Appellant has, of course, the usual time for filing his motion for rehearing from the filing of this opinion.